THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* EUGENE SACCHITELLA, Appellant.

First Department, December 19, 1968.

*Joseph E. Brill* for appellant.

*Alan F. Scribner* of counsel (*Michael R. Juviler* with him on the brief; *Frank S. Hogan, District Attorney*), for respondent.

*Per Curiam.* This is an appeal from a judgment convicting defendant, after trial, of the crimes of feloniously selling of narcotics, felonious possession of a narcotic drug and felonious possession of a narcotic drug, with an intent to sell.

It can be argued that there was sufficient evidence adduced by the People to warrant a verdict of guilty. However, we are of the opinion that the admission into evidence of the tape which purportedly contains conversations held between the People's main witness, a professional police informer, and the defendant, was prejudicial error. This informer testified that he had been earning his livelihood in that capacity for the past three or four years, that he earned over-all about $14,000 and that he generally was paid at the rate of about $300 by the authorities for each case. It also appears that this informer has a long criminal record, including a number of felony convictions.

The informer testified that, prior to and on June 7, June 14 and June 19, 1967, he conversed with the defendant at the latter's pharmacy. On the three enumerated dates the informer was equipped with a concealed electric transmitter, which the police had placed on him for the purpose of recording the conversations that he had with the defendant. These conversations were allegedly recorded by the police who remained in a car outside of the defendant's pharmacy. The detectives' vehicle was equipped with a radio which picked up signals from the transmitter worn by the informer. By use of a microphone the conversations were allegedly channelled into a tape recorder located in the vehicle. All of the conversations were recorded on a single tape which, for some unexplained reason, was kept in the arresting officer's home for about 10 months, before it was delivered to the District Attorney. During this time said detective made a duplicate of the recording which was allegedly indistinguishable from the original. No identifying mark was placed on either tape.

In addition, the equipment used, the transmitter, receiver and recorder, were the private property of the arresting officer. The equipment had been personally purchased by him and was not issued or authorized by the Police Department or by the District Attorney. The voices on the tapes were never identified during the trial, and the official Court Reporter was unable to and did not transcribe the recording on the several occasions it was heard by the jury.

We have listened to the tape and we found it to be thoroughly and completely inaudible throughout, except for some brief excerpts of the June 7 conversation which, while intelligible, were completely innocuous and without probative value in the case. The law is clear that a recording must be rejected if it is so inaudible and indistinct that a jury must speculate as to the contents thereof. (Ann. 58 ALR 2d· 1028; *People* v. *Velella,* 28 Misc 2d 579; *State* v. *Driver,* 38 N. J. 255; *Hammers* v. *State,* 337 P. 2d 1097 [Okla.]; *People* v. *Stephens,* 117 Cal. App. 2d 653.)

In *State* v. *Driver* (*supra,* p. 288) the court said: '' the tape recording * * * should have been excluded. It was garbled, full of static and other foreign sounds; it was unintelligible and inaudible for the most part, and a fair exercise of discretion required the entire tape to be withheld from the jury. * * * Basic fairness demanded its exclusion ''.

All of the defects mentioned in the last-cited case are found in the tape involved in the case at bar.

In *People* v. *Stephens* (*supra,* p. 662) the court stated as follows: " we find the jury listening to recordings that were in many instances inaudible and unintelligible. As heretobefore pointed out, how many different and varied interpretations were placed upon what the recordings conveyed by the various jurors is a matter of pure conjecture."

In view of the sharp issue of fact presented in this case, the inaudible recording was certainly a most vital piece of evidence against the accused. The jurors were left to speculate as to its contents. To them the tape must have seemed to be powerful confirmation of the police informer's testimony and defendant's guilt, and thus might well have constituted the most damaging piece of evidence presented by the prosecution.

The authenticity of the recording was a critical issue upon the trial and the error committed by the court in permitting it in evidence went to the heart of the prosecution's case. Under the circumstances, a new trial is required in the interests of justice. (*People* v. *Mleczko,* 298 N. Y. 153, 157.)

In the last-cited case the court stated (p. 162) as follows: " if the court believes that the errors may have misled the jury, may have influenced the verdict, then the error may not be deemed technical, and a reversal will follow — even though the court may conclude that the jury properly decided the case on the evidence adduced."

In view of the prejudicial error committed by the court, as described above, we deem it unnecessary to pass upon the other purported errors claimed by appellant or the constitutional issue raised by him.

The judgment should be reversed, on the law, and a new trial ordered.

STEVENS, J. P., CAPOZZOLI, TILZER, RABIN and McNALLY, JJ., concur.

Judgment of conviction unanimously reversed, on the law, and a new trial ordered.