■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RONALD T. BEASLEY, Appellant. — Appeal from a judgment of the County Court of Albany County (Harris, J.), rendered October 7, 1982, upon a verdict convicting defendant of the crime of criminal sale of a controlled substance in the third degree. The evidence against defendant consisted of a foil packet containing cocaine and the testimony of a police informant to whom he had given the cocaine, corroborated by two detectives. Allen Clow, the informant, is an admitted drug addict and has been on methadone for several years. Arrested for selling Valium, the police offered him a "free ride" in exchange for aid in arresting more important drug distributors in the Albany area. Defendant was agreed upon as a target and Clow proceeded to contact him. Tape recordings were made of several conversations between Clow and defendant; the trial court admitted into evidence a tape of telephone conversations had on December 17, 1981, in which defendant and Clow arranged to meet at Clow's house to taste a "piece of pie", the street code for testing the quality of cocaine. This tape recording was played for the jury during trial. A tape of the ensuing meeting was also received into evidence, but simply for the limited purpose of showing that it was in fact made; the prosecution and defense had agreed to its inaudibility prior to trial. The batteries on a listening device placed in Clow's dining room by the police ran down and the police were unable to hear defendant's and Clow's conversation. Although this second tape was not played at trial, the jury asked to hear a portion of it during their deliberations. When that request was received from the jury, defense counsel asked the Trial Judge if he intended to grant the jury's request, to which the Judge responded, "I don't know," and then noting the tape was in evidence said, "I will ask them what part they want to hear." After listening to only the first two minutes of this tape in open court, the jury was then permitted to take the entire tape, together with a tape recorder, back to the jury room. While no objection was made at this juncture, defense counsel had objected earlier to this tape's admission into evidence at all. Defendant contends that submitting this tape to the jury when it had not even been played before deliberations began constituted reversible error. We agree. The rationale behind the rule denying admission into evidence of unintelligible tapes is to prevent the jury from speculating as to the meaning of sounds on the tape (*People v Weyant,* 68 AD2d 608, 613; *People v Sacchitella,* 31 AD2d 180). This audible but seemingly incomprehensible tape just invites conjecture and varied interpretations of its contents by the listener. We have heard the tape and find that, although garbled and replete with static, voices are discernible and words occasionally distinguishable, presenting the very situation the rule was designed to obviate. This error takes on larger proportions than it otherwise might, for unfortunately defendant's conviction rests to a large degree on the jury's acceptance of Clow's testimony that, during the meeting on December 17, 1982, defendant gave him the packet of cocaine which was ultimately delivered to the police. Not only was Clow, as already observed, a drug addict with a personal stake in effecting defendant's arrest and conviction, but the police concededly made a less than thorough search for concealed cocaine in Clow's apartment before that meeting was held. Beyond that, it is also noteworthy

that the parties were not afforded the opportunity to be heard on the issue of whether the jury could take this tape to the jury room pursuant to CPL 310.20, and since the tape was never listened to during the trial, defendant was not given the opportunity to confront this evidence. Basic fairness required that this tape be withheld from the jury. Judgment reversed, on the law, and matter remitted to County Court of Albany County for a new trial. Sweeney, J. P., Main, Mikoll and Yesawich, Jr., JJ., concur.

Kane, J., dissents and votes to affirm in the following memorandum. Kane, J. (dissenting). I disagree with the majority's conclusion that the submission of the inaudible tapes to the jury at the time of their deliberations mandates a reversal of the conviction in this case. I, too, have listened to the tapes in question, and I am of the view, as conceded by both parties to this appeal, that the recordings are "inaudible". An accurate description of the tapes was given by Detective Sergeant Fargione when he said, "There's just a lot of static and occasional noise that sounds like it's almost a voice and then more static." Since the inaudible tapes were received in evidence solely for the purpose of establishing the fact that tape recordings were made, as testified to by Sergeant Fargione, the jury should be entitled to decide for themselves whether the tapes were audible, if for no other reason than to test the credibility or corroborate the testimony of Fargione. I fail to see how this process could result in prejudice to defendant by causing speculation on the part of the jury as to the contents of the tapes, any more than might result from receipt of blood-stained clothing of a defendant found at the scene of a homicide when the identity of the person whose bloodstain is on the clothing is undetermined. What we are concerned with is establishing the foundation for the admission of the tapes for the limited purpose permitted by the Trial Judge; that is, proof of the accuracy of the description of the evidence offered. If the Trial Judge credits the foundation testimony and it is sufficient to support that conclusion, the item is admissible. "[I]nfirmities concerning chain of custody or *inaudibility* properly go to the *weight* of the evidence, not its admissibility" (*People v McGee,* 49 NY2d 48, 60, cert den *sub nom. Quamina v New York,* 446 US 942; emphasis added; accord *People v Graham,* 57 AD2d 478, 480, affd 44 NY2d 768). Moreover, at the time the jury took the tapes in question into the jury room, defense counsel raised no objection nor exception at that point. However, and in any event, if one were to conclude that error was committed, it would be harmless, for on this record there is no significant probability that the jury would have acquitted defendant had it not been for their listening to the inaudible tapes (see *People v Crimmins,* 36 NY2d 230, 242). As to Allen Clow's testimony, it was supported and corroborated by the testimony of the police officers. In the final analysis, it presented issues of credibility which were resolved by the jury. The chain of custody of the contraband material was established from the time of its seizure to the chemical analysis, all in accordance with the requisite requirement of reasonable assurance (*People v Julian,* 41 NY2d 340, 343; *People v Washington,* 96 AD2d 996). The conviction should be affirmed.