**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Leonard WARMSBECKER, Jr., Defendant and Appellant.**

**Cr. Nos. 900246, 900247.**

Supreme Court of North Dakota.

Feb. 21, 1991.

Janet Holter Zander of Anseth & Zander, Williston, for defendant and appellant.

Charles C. Wilder, Asst. State's Atty., Williston, for plaintiff and appellee.

VANDE WALLE, Justice.

◼ Leonard Warmsbecker appealed from a jury verdict convicting him of disorderly conduct in violation of section 12.1–31–01, NDCC, and from the sentence imposed resulting from that conviction.[1] We affirm the conviction.

In the early morning hours of July 7, 1989, Christina Belisle and Cheryl Lindblom were walking from a convenience store to Christina's home when three men began to verbally harass and pursue the two teenage girls. The girls ran to Christina's home and informed her father, Willi-ston police officer David Belisle, of this incident. The girls were unable to describe the faces of the three men but did report that the men appeared intoxicated and that one of them was wearing a red shirt.

Belisle and the two girls left the house in Belisle's car to find the men. Approximately three blocks from his house, Belisle saw three men, one of whom was wearing a red shirt, walking on the sidewalk along Eighteenth Street. The three men seen by Belisle were later identified as the defendant Warmsbecker, his brother Terry Warmsbecker, and friend Scott Lantz. Belisle drove his vehicle to the curb with the left side of the vehicle adjacent to the sidewalk and, while sitting in his vehicle, accused the men of chasing his daughter. Belisle told the men that he was a police officer but produced no identification. Belisle, still in his car, restrained Warmsbecker by grabbing his shirt. It is unclear whether Belisle struck Warmsbecker with his fist, but the testimony did establish that Warmsbecker responded to Belisle's actions by delivering at least one blow to his face.

Belisle returned home and telephoned the Williston Police Department. Four patrol cars responded and after a considerable search Warmsbecker was apprehended. Warmsbecker was arrested by Officer Mark McNamee and was transported to the Williams County jail. Warmsbecker became verbally abusive while in the patrol car en route to the jail. While in an elevator at the jail, Warmsbecker continued his verbal abuse and attempted to kick McNamee. Warmsbecker was videotaped during the booking process and remained verbally abusive and threatening throughout.

Warmsbecker was charged with simple assault for striking Belisle and with disorderly conduct for engaging in violent and threatening behavior following his arrest for simple assault. Warmsbecker entered a plea of not guilty to each charge and was scheduled for a single trial on both charges. Warmsbecker moved the court

---

1. An appeal may be taken from a verdict of guilty; no provision is made for an appeal from a sentence. NDCC § 29–28–06.

for relief from prejudicial joinder of offenses pursuant to Rule 14, NDRCrimP.[2] The trial court denied Warmsbecker's motion and he was tried by a single jury on the two charges. The jury returned a verdict of not guilty on the assault charge but guilty on the disorderly conduct charge. The court sentenced Warmsbecker to thirty days in jail, twenty-seven of which were suspended for one year, and assessed costs in the amount of $400.00.

Warmsbecker raises three issues on appeal:

I. Whether the trial court erred in denying Warmsbecker's motion for separate trials.

II. Whether the trial court erred in allowing the State to introduce the videotape depicting Warmsbecker's behavior during the booking process.

III. Whether the sentence imposed violates Warmsbecker's right of due process.

### I. Separate Trials

■ Although the offenses of assault and disorderly conduct were charged in separate criminal complaints, the charges were joined at a single trial. Rule 13, NDRCrimP, governs such joinder and provides:

### "TRIAL TOGETHER OF INDICTMENTS OR INFORMATIONS OR COMPLAINTS

"The court may order two or more indictments, informations, or complaints to be tried together if the offenses and the defendants, if there is more than one, could have been joined in a single indictment, information, or complaint. The procedure shall be the same as if the prosecution were under a single indictment, information, or complaint."

Consolidation of offenses under Rule 13 is proper if the offenses charged in the separate criminal complaints could have been joined in a single charge under Rule 8(a), NDRCrimP. *State v. Gann*, 244 N.W.2d 746 (N.D.1976). Under Rule 8(a) two offenses may be charged in the same complaint in a separate count for each offense if they "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of the common scheme or plan." The decision to consolidate offenses at trial is left to the discretion of the trial court. *State v. Gann, supra.* We will reverse a trial court's decision only where there is a clear abuse of that discretion. *Id.*

In the present case, the trial judge determined that the actions resulting in the assault charge were closely connected to the actions resulting in the disorderly conduct charge. The trial judge in his order denying the motion for separate trials summarized the connection as follows:

"The two offenses here are charged against the same defendant, are alleged to have happened in a short period of time on the same evening, and lead logically back and forth to similar provocations. Defendant claims he was wrongfully accosted by an off-duty policeman, and later allegedly engaged in disorderly conduct by engaging in threatening behavior while being booked in on the first offense.

"It would be difficult to try the second case, for example, without bringing in the reason for the conduct complained of. The offenses are logically related."

■ As the trial judge indicated, Warmsbecker's post-arrest behavior which resulted in the disorderly conduct charge was inextricably intertwined with his behavior which resulted in the arrest for as-

2. Rule 14, NDRCrimP, provides:
"RELIEF FROM PREJUDICIAL JOINDER
"If it appears that a defendant or the prosecution is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together, the court may order an election or separate trials of courts, grant a severance of defendants or provide whatever relief justice requires. In ruling on a motion by a defendant for severance the court may order the prosecuting attorney to deliver to the court for inspection *in camera* any statements or confessions made by the defendants which the prosecution intends to introduce in evidence at the trial."

sault. Indeed, Warmsbecker defended his conduct while at the jail by asserting that he was feeling "extremely belittled" because he was "being arrested for something for which [he] didn't do." A jury could not intelligently consider this defense without an explanation of events preceding his initial arrest. When an action in response to an arrest amounts to criminal conduct and is closely connected to the behavior which resulted in the initial arrest, joinder of the consequential criminal charge may be appropriate. *Cf. People v. Solak*, 382 N.W.2d 495 (Mich.App.1985). [The charge of assaulting a police officer was properly joined with the charge of driving under the influence of intoxicants when the former offense occurred during the investigation of the latter.]

■ Although joinder of charges may be proper under Rule 8(a), the trial judge may consolidate charges under Rule 13 "only if the doctrine of trial expediency may be effected without interference with substantial justice." *State v. Gann, supra* at 750. Under Rule 14, an aggrieved defendant may seek relief from prejudicial joinder. *See* footnote 1, *supra*, for the text of Rule 14. The defendant, however, has the burden of demonstrating substantial prejudice from a consolidated trial. *State v. Boushee*, 284 N.W.2d 423 (N.D.1979). A mere showing that a separate trial would have provided a better chance of acquittal will not suffice. *State v. Boushee, supra.*

■ Warmsbecker asserts two prejudicial effects of the consolidation of the charges. First, Warmsbecker asserts that consolidation encourages the jury to transfer guilt from one charge to the other. This general assertion is weakened in the instant case by reason of the jury's ability to keep separate the charges as evidenced by the guilty verdict on the disorderly conduct charge and the not guilty verdict on the assault charge. Second, Warmsbecker asserts that in cases where two charges are pending against a defendant it is too easy for a jury to "split[] the difference" by finding him guilty of one charge, but not guilty on the other charge. Warmsbecker's assertions are mere speculation.

The jury in the instant case was specifically admonished by the trial court to consider each charge separate and apart from the other. We must assume, without proof to the contrary, that the jury heeded that admonition. *See Powers v. Martinson*, 313 N.W.2d 720 (N.D.1981). Warmsbecker has not demonstrated his claim that he was prejudiced by joinder of the charges.

## II. Introduction of the Videotape

The second issue raised by Warmsbecker is whether the trial court erred in allowing the State to introduce the videotape taken during Warmsbecker's booking. Warmsbecker initially contends that the videotape should not have been allowed in as rebuttal evidence.

After the defense had rested, the prosecution called two rebuttal witnesses to the stand. The second witness, jailer Steve Thompson, described the process for videotaping bookings and helped lay the foundation for the introduction of the videotape of Warmsbecker being booked. The avowed purpose for introducing the videotape was to rebut Warmsbecker's testimony which minimized his behavior at the jail and which contradicted testimony of the State's witnesses. Warmsbecker argues that the trial court abused its discretion in allowing the State to introduce the videotape on rebuttal because it should have been introduced, if at all, in the State's case in chief. The effect of introducing the videotape during rebuttal, Warmsbecker alleges, was to sensationalize his use of profanity during the booking and to outrage the jury only moments before they retired to deliberate.

■ Under the rules of evidence, the trial court has wide discretion over the mode and order of presenting evidence. *See* Rule 611 NDREv (Explanatory Note). In this case, Warmsbecker made his credibility an issue by testifying about his demeanor during the arrest and booking process. *See State v. Allen*, 237 N.W.2d 154 (N.D. 1975). The trial court did not abuse its discretion in allowing the State to rebut Warmsbecker's testimony downplaying his own behavior. Further, the possibility of prejudice in allowing the videotape to be

introduced on rebuttal was tempered by the fact that Warmsbecker and his counsel had viewed the tape prior to trial and Warmsbecker was allowed an opportunity to retake the stand to rebut the State's rebuttal evidence.

■ Warmsbecker next asserts that the introduction of the portion of the videotape wherein he and the police officers were off-camera but were clearly audible was unfairly prejudicial in that the jury was left to speculate as to the physical actions of the parties during this period of the booking process. In support of this assertion, Warmsbecker likens this case to one in which portions of audiotapes which involve critical issues at trial are inaudible or of poor quality. Courts have held that audiotapes of poor quality may be excluded in order to prevent the jury from speculating as to what was said during the inaudible portion and from reaching an erroneous decision. *See Carter v. State*, 254 So.2d 230 (Fla.1971); *People v. Sacchitella*, 31 A.D.2d 180, 295 N.Y.S.2d 880 (1968).

Warmsbecker's analogy is unconvincing. The portion of the videotape observed by the jury in which the parties were off-camera was indisputably comprehensible. The videotape could be more closely analogized to an audiotape of good quality to which Warmsbecker has offered no justification for exclusion. Warmsbecker does not challenge the relevancy of the contents of the videotape nor does he challenge the adequacy of the foundation for introduction. Warmsbecker was given the opportunity to testify after the jury had viewed the videotape in order to minimize the risk of prejudicial speculation. The trial court did not abuse its discretion in allowing the jury to observe the videotape of Warmsbecker's booking.

### III. Sentencing

The final issue raised is whether the sentence imposed on Warmsbecker violated his right to due process. The basis for Warmsbecker's assertion is that the trial court did not set forth written reasons for imposing a particular sentence as it is required to do pursuant to section 12.1–32–02(6), NDCC.[3] Warmsbecker suggests that the trial court imposed the maximum penalty of thirty days' imprisonment because it improperly considered both his decision to plead not guilty and the assault charge of which he was acquitted.

■ A trial judge is allowed the widest possible range of discretion in fixing criminal sentences. *State v. Ennis*, 464 N.W.2d 378 (N.D.1990); *State v. Cummings*, 386 N.W.2d 468 (N.D.1986). Appellate review of a criminal sentence is very limited. Traditionally, we have been limited to determining only whether the judge acted within the limits prescribed by statute, or substantially relied on an impermissible factor. *State v. Ennis, supra; State v. Cummings, supra.*

In *Ennis*, we concluded that expansion of the traditional, limited appellate review of a trial court was not contemplated by the Legislature when it enacted section 12.-1–32–02(6). The apparent rationale for requiring written reasons for a particular sentence was (1) to assist the parole board or board of pardons in making subsequent decisions regarding parole or commutation of sentences [*State v. Ennis, supra*]; (2) to ensure that the sentencing judge has carefully considered all relevant factors [*Id.*]; or possibly (3) to ensure that the defendant understands the rationale of the punishment meted out by the judge.

■ The failure of the trial court, in this case, to submit written reasons did not frustrate the apparent aims of the Legislature in enacting section 12.1–32–02(6), NDCC. At the sentencing hearing the judge clearly stated that he considered Warmsbecker's tendency to alter his behavior while under the influence of alcohol and his "unseemly reaction" to treatment by police officers in reaching a decision to impose the particular sentence. The transcript of the sentencing hearing was made a part of the official record of this case. The effect of transcribing the oral statements made by the sentencing judge and

---

3. Section 12.1–32–02(6), NDCC, provides:
"All sentences imposed must be accompanied by a written statement by the court setting forth the reasons for imposing the particular sentence. The statement must become part of the record of the case."

including the transcript in the record, with full opportunity for review, was to create a written statement which sustained the objectives of the Legislature in enacting section 12.1–32–02(6).[4]

A review of the transcript of the sentencing hearing reveals that the sentencing judge did not consider the improper factors suggested by Warmsbecker. The judge specifically stated that he did not consider the fact that Warmsbecker exercised his right to a trial by jury. While the judge initially ordered Warmsbecker to pay restitution to Officer Belisle for medical expenses resulting from the alleged assault, that order was subsequently rescinded. The judge clearly stated that the sentence imposed was in response to the jury having found Warmsbecker guilty of the Class B misdemeanor of Disorderly Conduct and he acknowledged that Warmsbecker was acquitted of the assault charge. Warmsbecker's sentence was within the limits prescribed by statute and there is nothing in the record to show that the sentencing judge relied on any improper factor in determining the sentence to be imposed.

For reasons herein stated, we affirm the conviction.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, concur.

4. Section 12.1–32–02(6), NDCC, unequivocally imposes a duty upon the sentencing judge to set forth written reasons for imposing a particular

sentence and this opinion should not be read to abate that duty.