1999 ND 164

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Jerrod Dean WAMRE, Defendant and Appellant.**

**State of North Dakota, Plaintiff and Appellee,**

v.

**Burnette Marvin Wamre, Defendant and Appellant.**

**Nos. 980239, 980240.**

Supreme Court of North Dakota.

Aug. 25, 1999.

Brett M. Shasky, Assistant State's Attorney, Fargo, N.D., for plaintiff and appellee.

Chad R. McCabe (argued), Vinje Law Firm, Bismarck, N.D., on behalf of Brian W. Nelson, Fargo, N.D., for defendant and appellant Jerrod Dean Wamre.

Donald R. Becker (argued), Linton, N.D., for defendant and appellant Burnette Marvin Wamre.

KAPSNER, Justice.

[¶ 1] Jerrod Wamre and Burnette Wamre appealed the denial of their suppression and severance motions. We conclude there was probable cause for the searches and the trial court did not abuse its discretion in denying the severance requests. We affirm.

[¶ 2] Jerrod Wamre, Burnette Wamre, and Michael David Morton [1] were charged with numerous counts of burglary; possession of stolen property; sale of stolen property; theft of property; and removing or altering engine, serial, or identification numbers. Jerrod and Burnette Wamre each moved to suppress evidence obtained in the execution of two search warrants on May 8, 1996. They also moved to sever the trials of the defendants and to sever trial of some of the counts charged. After a hearing, the district court denied the motions. Wamres each entered conditional pleas of guilty to several counts.

[¶ 3] The first warrant, which was issued at 8:20 a.m. on May 8, 1996, authorized officers to search "the premises located at 770—36 [th] Street SW, Fargo, North Dakota," and seize the following items:

> Keys for businesses, tv's, stereo equipment, 8 mm cameras and recorders, video surveillance cameras, electrical supplies, notes, ledgers, indicia, address books, lawn tractors, lap top computer, Arctic Cat snowmobiling clothing, helmet and accessories.

While executing that warrant, officers requested another warrant. The second warrant, which was issued at 11:45 a.m. on May 8, 1996, authorized officers to search the same premises and seize the same items as the first warrant, plus the following additional items:

> Tools, welders, speed rooter model 90, car tires, home air conditioning units, wood cabinets, home heating units, motor [vehicle] winter blade attachments, vehicle parts including new automobile windshields.

[¶ 4] Wamres contend on appeal: (1) There was no probable cause for the first search warrant; (2) Officers improperly conducted an exploratory search while executing the first warrant; (3) All search evidence should have been suppressed, because there was no probable cause for the first warrant and the second warrant was issued on incomplete information and omissions; and (4) The trial court abused its discretion by denying their severance requests.

## I

[¶ 5] Wamres contend there was no probable cause for the first search warrant issued on May 8, 1996. We recently addressed probable cause:

> Probable cause is required for a search warrant under the Fourth Amendment to the United States Constitution, and Article I, Section 8 of the North Dakota Constitution. Whether there is probable cause to issue a search warrant is a question of law. [State v.] Damron, 1998 ND 71, ¶ 5, 575 N.W.2d 912; State v. Hage, 1997 ND 175, ¶ 10, 568 N.W.2d 741; State v. Mische, 448 N.W.2d 415, 417 (N.D.1989). The totality-of-the-circumstances test is used to review whether information before the magistrate was sufficient to find probable cause, independent of the trial court's findings. Damron, 1998 ND 71, ¶ 7, 575 N.W.2d 912; Hage, 1997 ND 175, ¶ 11, 568 N.W.2d 741; State v. Herrick, 1997 ND 155, ¶ 12, 567 N.W.2d 336.
>
> The magistrate should make a practical, common sense decision on whether probable cause exists to search that particular place. Damron, 1998 ND 71, ¶ 6, 575 N.W.2d 912; Hage, 1997 ND 175, ¶ 10, 568 N.W.2d 741; Rydberg, 519 N.W.2d at 308. We give deference to the magistrate's factual findings in determining probable cause if there is a substantial basis for the conclusion. State v. Woehlhoff, 540 N.W.2d 162, 165 (N.D.1995); State v. Frohlich, 506 N.W.2d 729, 732 (N.D.1993).

State v. Rangeloff, 1998 ND 135, ¶¶ 16–17, 580 N.W.2d 593. See also State v. Olson, 1998 ND 41, ¶ 19, 575 N.W.2d 649. In Rangeloff, we explained the test for probable cause:

---

1. The charges against Morton were severed from those against the Wamres.

"The proper inquiry is whether the magistrate, in considering the nature of the crime, the criminal, the thing to be seized, and the place to be searched, could reasonably believe that evidence of criminal activity was probably at the described location." *Hage,* 1997 ND 175, ¶ 13, 568 N.W.2d 741. While each piece of information alone may not be sufficient to establish probable cause, the sum total layers of information and the synthesis of what the police know, have heard, and observed as trained officers, weighed in a "laminated total" may amount to probable cause. *Damron,* 1998 ND 71, ¶ 7, 575 N.W.2d 912 (citing *Ringquist,* 433 N.W.2d at 215–16) (other citations omitted). *Rangeloff,* 1998 ND 135, ¶ 28, 580 N.W.2d 593.

■ [¶ 6] Probable cause to search does not require the same standard of proof necessary to establish guilt at trial. *State v. Olson,* 1998 ND 41, ¶ 28, 575 N.W.2d 649; *State v. Frohlich,* 506 N.W.2d 729, 731 (N.D.1993). "[P]robable cause to search exists 'if it is established that certain identifiable objects are probably connected with criminal activity and are probably to be found at the present time at an identifiable place.'" *Frohlich,* 506 N.W.2d at 731–32, quoting *State v. Ringquist,* 433 N.W.2d 207, 212 (N.D.1988). Circumstantial evidence may alone establish probable cause to support a search warrant. *Olson,* at ¶ 22. The information available for a probable cause determination is considered together, not separately. *Id.* at ¶ 23; *Frohlich,* 506 N.W.2d at 732.

■ [¶ 7] Whether or not the information before the magistrate established probable cause to issue a search warrant is a question of law, and, on appeal, we review the sufficiency of the information before the magistrate independent of the trial court's decision. "If there is a substantial basis for the magistrate's conclusion that probable cause exists, we will not disturb that conclusion on appeal." *Frohlich,* 506 N.W.2d at 732. We do not reverse a trial court's decision to deny a suppression motion if it is not contrary to the manifest weight of the evidence. *State v. Winkler,* 1997 ND 144, ¶ 8, 567 N.W.2d 330. "This standard recognizes the significance of the trial court's position in determining the credibility of witnesses." *Id.* We resolve doubt about the sufficiency of an affidavit in support of a request for a search warrant "'in favor of sustaining the search, and the judgment of the magistrate.'" *Olson,* 1998 ND 41, ¶ 28, 575 N.W.2d 649, (quoting *State v. Metzner,* 338 N.W.2d 799, 805 (N.D.1983)). "[W]hen reviewing a magistrate's determination of probable cause, we resolve doubtful or marginal cases in favor of the magistrate's determination." *Rangeloff,* 1998 ND 135, ¶ 29, 580 N.W.2d 593.

■ [¶ 8] In Exhibit B to his affidavit in support of the request for the first search warrant, Detective Budd Warren said, among other things: (1) On April 29, 1996, Fargo police officers arrested Michael Morton at W.W. Wallworks, where officers observed in Morton's pickup leather seats later found to have been stolen; (2) Officers searching Morton's vehicle found stolen keys, including keys to D & M Industries, a manufacturer of keys for many Fargo businesses; keys to businesses reporting stolen cash, a lap top computer, tire books, four Hoosier tires, and Square D circuit breakers; (3) A search of a home believed to be Morton's residence led officers to Richard Nelson, who admitted possessing the four Hoosier tires from OK Tire, and interviews with him uncovered a burglary and theft ring involving Nelson and Morton; (4) Richard Nelson admitted he and Michael Morton had burglarized construction sites in the Fargo area, and property from some of those construction sites was recovered in executing search warrants at Nelson's and Michael Morton's residences; (5) Officers recovered a large number of Square D circuit breakers and other electrical components in a search of Nelson's residence on May 7, 1996; and (6) In executing a May 7, 1996, search war-

rant at Mike Morton's Moorhead residence, officers found electrical components, including Square D circuit breakers, belonging to Dakota Electric Supply Company, camera equipment, a 35 millimeter camera, and evidence Morton was in possession of a Sony 8 millimeter camera stolen from a Highway Patrol vehicle being repaired at Wallworks.

[¶ 9] Warren averred: (1) Mike Morton's brother, Craig Morton, and Craig's wife, Jennifer, indicated Mike Morton and Jerrod Wamre had snowmobile clothing and accessories, including Arctic Cat helmets, stolen from McLaughlin Sales; (2) Craig and Jennifer Morton indicated Mike Morton was involved in stealing auto parts from area auto wrecking yards; they said they knew Mike Morton had keys to local businesses; they said Mike Morton told them he had obtained a new 35" black JVC television set from a warehouse that had recently changed the front locks, but not the rear locks, and he could get them one if they wanted; and (3) Investigators learned that warehouse belonged to Northern Plains Distributing, whose manager indicated it was missing four or five 35" JVC television sets and also learned someone with keys "had obtained a general brand sewer sucking machine, or speed router, valued at $1,000.00," belonging to Westburn Supply Corporation.

[¶ 10] Warren further averred: (1) Bernard Wamre and Jerrod Wamre have a business, Triple A Auto Leasing and Rental, located in a metal structure at 777 North 36ᵗʰ Street SW in Fargo; Even Auto rents space from Triple A, as does Michael Morton; "These businesses are all attached and some have walk through doors adjoining each other ... which provides the Wamre's access to all of the adjacent businesses"; (2) On May 3, 1996, Bernard and Jerrod Wamre indicated to detectives "they knew Michael Morton as a casual acquaintance ... the relationship was not extensive and they were not well acquainted with him"; (3) On May 7, 1996, the owners of Even Auto reported Jerrod Wamre had been moving suspicious property onto the Even Auto premises and said he needed to keep it there overnight; there was a sewer machine like the one missing from Westburn Supply Corporation, and a small portable welder; (4) Investigators learned from Even Auto employees that the relationship between the Wamres and Mike Morton was more extensive than Wamres had earlier said, and Mike Morton had an adjacent shop; (5) Neal Wells told investigators at Even Auto on May 7, 1996, that Jerrod Wamre tried to sell him a new furnace, which he said was stored in Wamres' storage shed; (6)

During surveillance of Even Auto and Triple A Auto Leasing on the evening of 5/7/96, Detective Lies ... witnessed at least three newly installed surveillance cameras on the outside of the rented building containing Even Auto and Triple A Auto Leasing. Det. Lies was able to ascertain that these were CCVE, 8 millimeter surveillance cameras and was also aware that Red River Electric had reported cameras of the same make, model and design stolen from the project site of Red River Electric during construction.

and, (7) "The investigation into the theft ring has revealed that there is an intense relationship between Bernard and [Jerrod] Wamre, Michael Morton and Richard Nelson."

[¶ 11] Considering the totality of the circumstances, we conclude the magistrate reasonably made a practical, common-sense decision there was a fair probability the items for which the first search warrant was sought were probably connected with criminal activity and probably could be found at the place sought to be searched. Thus, we conclude there was probable cause for issuance of the first search warrant.

II

[¶ 12] Wamres next contend officers executing the first search warrant improperly conducted an exploratory

search for serial numbers. They allege in their brief:

> Testimony clearly indicates that Detective Paul Lies was checking serial numbers against his log sheet of reportedly stolen objects.... Lies confirms what has been suspected, that the first warrant was simply a ruse to get into AAA Auto so that officers could conduct an exploratory search of the premise.

Wamres further allege: "By doing this the officers compiled a list of items to include on another affidavit for a warrant. This type of activity is not different than what occurs in a warrantless search situation."

[¶ 13] Ascertainment of serial numbers may or may not involve a search. In *Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), after a bullet was fired through an apartment floor, officers who entered to search for the shooter, victims, and weapons noticed and examined some stereo equipment they suspected might be stolen. As interpreted by this court in *State v. Runck*, 534 N.W.2d 829, 834 (N.D.1995), the United States Supreme Court held "recording serial numbers in plain view was permissible, but moving the equipment to discover the serial numbers was a search that required probable cause to believe the equipment was stolen."

[¶ 14] Wamres argue the activity undertaken by the officers in this case is similar to that of the officers in *Hicks* requiring that the evidence seized as a result of the search be suppressed. The *Hicks* Court determined that movement of stereo equipment to inspect the serial numbers was a search that required independent probable cause. *Hicks*, 480 U.S. at 326, 107 S.Ct. 1149. The warrantless entry into the apartment was justified under the exigent circumstances of searching for a shooter in those premises. The examination of stereo equipment within the apartment had nothing to do with the necessary scope of the search under the exigent circumstances. As no independent probable cause existed to examine the stereo, the evidence seized without a warrant was suppressed. The Court in *Hicks* noted, "taking action, unrelated to the objectives of the authorized intrusion, which exposed to view concealed portions of the apartment or its contents, did produce a new invasion of respondent's privacy unjustified by the exigent circumstance that validated the entry." *Id.* at 325, 107 S.Ct. 1149.

[¶ 15] Under *Hicks*, even an object in plain view can be the subject of a search requiring probable cause to examine it further, if the object or area in which it is located bears no relation to the justification for police presence in the first place. But *Hicks* cannot be read to indicate that any examination of an object, even for an identifying number, requires suppression of the evidence whenever that object is not listed on the search warrant which the police are currently executing. Two facts distinguish this situation from *Hicks*: 1) the police had entered Wamres' and Morton's business premises on a search warrant specifically searching for items which they believed to be stolen, and 2) no showing has been made that the police had exceeded the authority to search under the first warrant which provided the justification for the police presence.

[¶ 16] An officer need not ignore evidence of crime observed in plain view while executing a search warrant for other things. In executing a search warrant, "[a] seizure of evidence of a crime found in plain view is legitimate even though the items seized are not listed in the search warrant." *State v. Kottenbroch*, 319 N.W.2d 465, 471 (N.D.1982). Under the plain view doctrine, if police officers are lawfully in a position from which they view an object, whose incriminating character is immediately apparent, and the officers have a lawful right of access to the object, they may seize it without a warrant. *Minnesota v. Dickerson*, 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); *Horton v. California*,

496 U.S. 128, 135–36, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). "[I]f contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no 'search' ... or at least no search independent of the initial intrusion that gave the officers their vantage point." *Dickerson,* 508 U.S. at 375, 113 S.Ct. 2130. The police entered premises occupied by Wamres and by Morton on the basis of the first warrant which identified certain items which the police believed to be stolen by a burglary ring involving Wamres and Morton. We have already determined there was probable cause to issue the first warrant.

■ [¶ 17] While recognizing the burden of persuasion that the government's intrusion on a privacy interest rests with the prosecution, courts nevertheless require defendants at minimum to allege the specifics on which they base their claim of a constitutionally impermissible invasion. *Alderman v. United States,* 394 U.S. 165, 173, 183, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); *City of Jamestown v. Snellman,* 1998 ND 200, ¶ 6, 586 N.W.2d 494. To warrant an evidentiary hearing, a motion to suppress evidence must raise specific allegations of impropriety. *United States v. Chavez–Marquez,* 66 F.3d 259, 261 (10 th Cir.1995). Searching officers handled items and examined them for serial numbers. Searching officers may move items as necessary to conduct the search for items on the warrant. *See United States v. Weinbender,* 109 F.3d 1327, 1329–30 (8 th Cir.1997) (holding an officer did not exceed the scope of a search warrant when he removed drywall and wood from a closet wall since a lawful search extends to all areas in which the object may be found); *United States v. Erickson,* 794 F.Supp. 273, 276 (N.D.Ill.1992) (explaining that in searching for easily concealed items, it was proper for officers to search any area where the specified property could have been located). Wamres have not specified how the officers exceeded the scope of the search permitted by the first warrant, nor specified any items whose serial numbers the officers were not authorized by the first warrant to discover, or which were not in plain view.

■ [¶ 18] A motion to suppress "must of course identify the items which the defendant seeks to suppress." 5 Wayne R. LaFave, *Search and Seizure* § 11.2(a) (3d ed.1996); *see also O'Neal v. United States,* 222 F.2d 411, 412 (D.C.Cir.1955); *United States v. Cardiges,* 881 F.Supp. 717, 725 (D.N.H.1995); *State v. Bell,* 832 S.W.2d 583, 587 (Tenn.Cr.Ct.App.1991); *People v. Seawright,* 228 Ill.App.3d 939, 171 Ill.Dec. 183, 593 N.E.2d 1003, 1022 (1992). The suppression hearing was continued to give the Wamres an opportunity to identify their specific complaints about the warrants and the search conducted. Wamres did not provide any specifics to the trial court. They argue before this court the general assertion that the officers inspected serial numbers of objects on the premises and compared property on the premises with lists of stolen property. They assert that such conduct made the search an exploratory search, and such conduct requires suppression of the evidence. Wamres have not shown the searching officers impermissibly examined any serial numbers or viewed any property they were not authorized to view under the authority of the first warrant, and we hold their conclusory arguments on this issue are without merit.

■ [¶ 19] Wamres also challenge the timing of the second warrant and search:

What is most troubling about the second search is that the search appears to have been concluded before the warrant was issued. Testimony indicates that the warrant was issued at 11:45 a.m., but that the time noted for the inventory was 11:25 a.m. Testimony indicated that when the inventory was completed the time was noted. Thus, the search was completed 20 minutes before the warrant was issued.

[¶ 20] The searching officers attached all of their inventory sheets to the second warrant. The first inventory page specified the time it was initiated as "0850." It lists and describes items A–K. Attached to the second warrant with it are four more inventory pages, listing and describing items 1–82. It indicates a time of "1125." Officer Lies testified the officers began their search under the first warrant at 8:50; Wamres, who were present during the search, took the officers to Morton's "back shop," which they started searching at 11:25, as authorized by the first warrant; the officers "only kept one inventory throughout the whole process"; the first page of the inventory listed items "to the point when we were going back to Moreton's [sic] shop" and "[t]he second page is the second search warrant and the items received from Moreton's [sic] shop pursuant to the first search warrant"; and the searching officers did not "seize items under the second warrant until that warrant arrived." In our view, Lies's testimony adequately explained the time notations.

### III

[¶ 21] Wamres contend all search evidence should have been suppressed, because the first warrant was issued without probable cause, and the second warrant was issued on incomplete information and omissions.

[¶ 22] Wamres argue the statement in the affidavit supporting the request for the first warrant misled the magistrate because it asserted "Det. Lies was able to ascertain that the mounted cameras were CCVE, 8 millimeter surveillance cameras and was also aware that Red River Electric had reported cameras of the same make, model and design were stolen from project sites of Red River Electric during construction." The testimony at the suppression hearing indicated that only the housing of the surveillance cameras mounted on the Wamres' property was visible.

[¶ 23] Wamres contend: "Had the magistrate known that Lies had no [way] of verifying the make and model of the surveillance cameras mounted outside of the AAA Auto Complex it is hard to imagine a warrant being issued for AAA Auto."

[¶ 24] A defendant has a limited right to challenge the truthfulness of factual allegations made in an affidavit supporting a request for a search warrant:

There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.... Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.

*Franks v. Delaware*, 438 U.S. 154, 171–72, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

The same analysis applies to omissions of fact. The defendant must show that the facts were omitted with the intent to make, or in reckless disregard of whether they thereby make, the affidavit misleading. The reviewing court must then determine whether, either absent the false material or supplemented with the omitted material, the affidavit's remaining contents are sufficient to establish probable cause.

*United States v. Clapp*, 46 F.3d 795, 799 (8th Cir.1995) (citations omitted). "Defendants bear the burden of proving the in-

tentional or reckless inclusion of false statements in a warrant affidavit." *United States v. Ozar*, 50 F.3d 1440, 1443 (8th Cir.1995). For a defendant to get a hearing under *Franks*, the false affidavit statement must mislead the magistrate into believing the stated facts exist, or affidavit statements must be deliberately false or misleading by omission, and they must affect the magistrate's evaluation of whether there is probable cause. *Rangeloff*, 1998 ND 135, ¶ 9, 580 N.W.2d 593.

[¶ 25] Officer Lies testified about the surveillance camera statements in the search warrant affidavits:

> THE WITNESS: Well, my—what happened with the surveillance cameras is when I first arrived at Flash's trailer to meet Neil Wells he informed me at that time that the Wamre's had just installed surveillance equipment. . . . He indicated that Mike Moreton [sic] was there, had installed the cameras on the building. He saw the cameras and they were 8 millimeter cameras. The CCVE is just closed circuit video equipment.
>
> Q. (By Mr. Becker) But you concluded that those were—had previously been reported stolen from Red River Electric; is that correct?
>
> A. Well, I was aware at that time that Red River Electric had reported closed circuit video equipment stolen.

[¶ 26] Under the totality of the circumstances, we cannot determine that Wamres have established the magistrate was misled by any intentional or reckless false statements, without which the warrant would not have been issued.

[¶ 27] Wamres argue the affidavit for the second warrant "omitted information regarding the officers searching the area, checking serial numbers and taking notes for comparison against items reported stolen." Much of the information in the affidavit supporting the request for the second warrant parroted information in the affidavit for the first. An additional paragraph was inserted describing information provided by Wamres during the search of the premises and describing tools and other items Wamres stated that Morton had left on the premises. The paragraph does specifically state a search was conducted under the first warrant; it does not state the officers checked for serial numbers. The second warrant permitted the officers to seize additional items. The Wamres have not shown that any item examined by the officers during the first search exceeded the scope of the permissible search under the first warrant. They cannot, therefore, argue the failure to identify specific serial numbers examined during the first search was a material omission in presenting the affidavit to the magistrate for the second warrant. We hold there was probable cause to issue the second warrant.

[¶ 28] Wamres have not met their burden under *Franks* of proving intentional or reckless inclusion of false statements, or statements deliberately false or misleading by omission. Nor have Wamres shown the affidavit's remaining contents are insufficient to establish probable cause to issue the first warrant. Wamres have not shown the second warrant was issued on incomplete information or omissions of material fact.

## IV

[¶ 29] Relying on Rules 8 and 14, N.D.R.Crim.P., Wamres contend the district court should have granted their requests for separate trials of defendants or offenses. Rule 8, N.D.R.Crim.P., provides:

> *(a) Joinder of Offenses.* Two or more offenses may be charged in the same indictment, information, or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected to-

gether or constituting parts of the common scheme or plan.

*(b) Joinder of Defendants.* Two or more defendants may be charged in the same indictment, information, or complaint if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting one or more offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

Rule 14, N.D.R.Crim.P., provides:

If it appears that a defendant or the prosecution is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever relief justice requires. In ruling on a motion by a defendant for severance the court may order the prosecuting attorney to deliver to the court for inspection in camera any statements or confessions made by the defendants which the prosecution intends to introduce in evidence at the trial.

[¶ 30] The purpose of N.D.R.Crim.P. 8 is to provide judicial convenience and economy. *State v. Neufeld,* 1998 ND 103, ¶ 12, 578 N.W.2d 536. "The purpose of Rule 14 is to promote economy and efficiency and to avoid a multiplicity of trials, where these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial." *State v. Purdy,* 491 N.W.2d 402, 405 (N.D. 1992). A decision to consolidate offenses at trial is left to the discretion of the trial court, and we will reverse a trial court's decision only if there is a clear abuse of discretion. *State v. Warmsbecker,* 466 N.W.2d 105, 108 (N.D.1991). "Under Rule 14, an aggrieved defendant may seek relief from prejudicial joinder," but "has the burden of demonstrating substantial prejudice from a consolidated trial." *Warmsbecker,*

466 N.W.2d at 109. "Joint trials of persons charged together with committing the same offense are the rule rather than the exception." *Purdy,* 491 N.W.2d at 405. "Bare allegations that a defendant would stand a better chance of acquittal in a separate trial or that there may be some 'spillover effect' from evidence against a codefendant is insufficient to compel severance." *Purdy,* 491 N.W.2d at 405–06.

[¶ 31] In their joint appellate brief, Wamres assert the following reasons why the trial court should have granted severance for trial: (1) It is "inconsistent" to try Burnette Wamre, who is charged with possession of stolen property, with a codefendant charged with burglary and possession of stolen property; (2) It is "inconsistent" to try Jerrod Wamre "with the codefendant who actually owned AAA Auto," where the stolen property was found; (3) Jerrod Wamre was charged with burglary with Morton, while Burnette Wamre was charged with "being in possession of stolen property along with Jerrod Wamre"; (4) Jerrod Wamre risks "the implied connotation that he was involved with Defendant Burnette Wamre regarding the property that was found at AAA Auto"; and (5) "Defendant Burnette Wamre also has the implied connotation that he was involved in the burglary charges levied against Defendant Jerrod Wamre." At oral argument, Burnette's attorney, who argued the severance issue for both defendants, contended there were statements by Jerrod that would have prevented him from calling Jerrod as a witness, but conceded he did not raise that before the trial court.

[¶ 32] Wamres have not created a record showing they have met their "burden of demonstrating substantial prejudice from a consolidated trial." *Warmsbecker,* 466 N.W.2d at 109. We conclude the trial court did not abuse its discretion in failing to order severance of the Wamres' trials or a severance of some of the charges.

[¶ 33] The judgments and orders are affirmed.

[¶ 34] VANDE WALLE, C.J., SANDSTROM, NEUMANN and MARING, JJ., concur.

