■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BARBARA A. MINCEY, Appellant.—Appeal by defendant from a judgment of the County Court, Dutchess County, rendered September 7, 1977, convicting her of criminal sale of a controlled substance in the second degree and criminal possession of a controlled substance in the third degree, upon a jury verdict, and imposing sentence. Judgment reversed, on the law, and new trial ordered. At the trial of this action a tape recording of an alleged drug sale was admitted into evidence. In considering whether to admit the tape, the Trial Judge noted "that the tape is of poor quality and were the court required to glean from the conversations that are contained on the tape, the court would be unable to do so for the most part". He later informed the jury "as you will soon find out [the tape is], largely static". We have listened to the tape and find that, for the most part, it is in fact inaudible and unintelligible, especially in those sections where defendant's voice is alleged to appear. The law is clear that a recording must be excluded from evidence if it is so inaudible and indistinct that a jury must speculate as to its contents *(People v Sacchitella,* 31 AD2d 180). Thus the tape was not evidence of criminal conduct on defendant's part and should have been excluded. The error in admitting the tape was compounded by the admission of what purported to be a transcript thereof, which was prepared solely by Trooper Tyler, the principal witness for the prosecution, and who was, himself, a participant in the recorded conversations. In order to constitute competent proof, a tape should at least be sufficiently audible so that independent third parties can listen to it and produce a reasonable transcript (see *People v Lubow,* 29 NY2d 58, 68). The transcript may then be provided to the jury, merely as an aid in listening to the tape (see *People v Feld,* 305 NY 322, 331-332). Here, the *only* person apparently able to decipher the tape was Trooper Tyler, a participant in the recorded conversations. The danger in permitting the jury to use a transcript prepared solely by a participant in the conversations, which is not capable of independent verification, is that where the tape is inaudible, the participant's memory of the events, rather than the actual sounds on the tape, becomes the source of the words on the transcript. We have examined the defendant's other contentions and find them to be without merit. Mollen, P. J., Damiani and O'Connor, JJ., concur; Hawkins, J., dissents and votes to affirm the judgment with the following memorandum, in which Latham, J., concurs: The accuracy of the transcript of a tape recording is an issue to be resolved by the jury (see *People v Roper,* 17 NY2d 711). The instruction to the jury that the transcript was to serve as a guide since the tape was "largely static" minimized the effect of this evidence. The instruction was coupled with the further caveat that it was to be considered "as a guide for your assistance * * * you heard the tape, you are free to conclude that you agree with the writing on the transcript, or disagree with it. You and you alone must decide what was on the tape and no other person." The credibility of

Trooper Tyler, the undercover officer who was the People's principal witness, and of the weight to be given to the transcript of the tape he prepared, were for the jury to determine. It apparently accepted Trooper Tyler's testimony that the defendant was the person who sold cocaine to him on the date in question.