■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANDRES CARRASCO, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Hayes, J.), rendered December 17, 1984, convicting him of arson in the second degree, assault in the second degree (two counts), reckless endangerment in the first degree (two counts), and conspiracy in the fourth degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law, and a new trial is ordered. The facts have been considered and determined to have been established.

The defendant was charged with, and convicted of, inter alia, arson in the second degree in connection with a fire at certain premises he owned on Pulaski Street in Brooklyn. The People's case with respect to the arson count was premised upon the defendant's alleged hiring of another individual to set the premises afire. The principal issue on appeal concerns the court's decision, after a hearing, to admit into evidence a tape-recorded conversation in Spanish between the defendant and a prosecution informant who had volunteered to wear a tape recorder and a transmitting device. An investigator for the Kings County District Attorney's Office, Deputy Chief White, and a Detective Ronald Stanley were in a nearby vehicle receiving the transmission, and overheard the conversation. At the audibility hearing, the official court translator was unable to produce a satisfactory translation of the conversation recorded due to her inability to comprehend certain portions thereof, especially the portions in which the defendant's voice was recorded. Over defense counsel's objections, the court determined that a translator should be permitted to take the tape and listen to it in private as often as was necessary to produce a transcription. The completed official transcript, which contained numerous notations of inaudibility, reveals that the informant, on several occasions during

the conversation, suggestively referred to an alleged accomplice whom she described as the person the defendant "had sent to set fire" to the house. The defendant's responses, however, insofar as the official transcription reveals, admitted no involvement in the arson. Despite the foregoing, the tape was admitted into evidence and played for the jurors, who were aided in their listening by the transcript. Deputy Chief White was called to the stand by the People and was permitted to testify to the conversation between the defendant and the prosecution informant, which he had overheard. White's direct testimony did not, however, include a narrative translation of the conversation in its entirety, but rather focused upon only a portion thereof. His selective translation inserted an incriminatory reference to an "agreement" between defendant and the alleged accomplice which had not been included in the official transcription of the conversation. The defendant now contends, *inter alia,* that the court erred in admitting the tape.

The law is clear that a recording must be excluded from evidence if it is so inaudible and indistinct that a jury must speculate as to its contents *(see, People v Ryan,* 121 AD2d 34; *People v Mincey,* 64 AD2d 615; *People v Sacchitella,* 31 AD2d 180). Moreover, in order to constitute competent proof, a tape should be at least sufficiently audible so that independent third parties can listen to it and produce a reasonable transcript *(see, People v Lubow,* 29 NY2d 58; *People v Mincey, supra).* Our review of the record discloses that the tape was not sufficiently audible to permit the production of a reasonable transcript by a third party and, therefore, its admission into evidence was error. Despite being afforded ample opportunity to translate the recording, the official court translator was unable to produce a satisfactory transcription of the conversation at the hearing. Even after the court translator was permitted to remove the tape for private listening—a practice of which we disapprove—the resulting transcription contained numerous notations of inaudibility, the effect of which was to seriously undermine the contextual flow and comprehensibility of the conversation recorded. More importantly, the only incriminatory portions of the transcript were the hearsay statements of the prosecutor's informant. While the defendant's translated comments were marred by portions of inaudibility, the informant's statements, including her suggestive comments, were, in contrast, fully transcribed. In light of the foregoing, the jury could well have been unduly influenced by the informant's repeated

suggestion of incriminatory involvement, even though the defendant himself admitted no involvement in reply. The prejudicial effect of the tape was further amplified when Deputy Chief White supplied the missing incriminatory flavor by testifying that he heard the defendant refer to an "agreement" he had made with an alleged accomplice charged with actually setting the fire. In sum, the probative value of the tape was far outweighed by the potential for prejudice and, therefore, Criminal Term should have exercised its discretion to exclude the tape from evidence (see, People v Brown, 104 AD2d 1044). Mangano, J. P., Weinstein, Lawrence and Kooper, JJ., concur.