■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAVID MORRIS, Also Known as STICK, Appellant. [807 NYS2d 228]—

Cardona, P.J. Appeal from a judgment of the Supreme Court (Lamont, J.), rendered August 13, 2002 in Albany County, (1) convicting defendant upon his plea of guilty of the crimes of criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the fourth degree, and (2) upon a verdict convicting defendant of the crime of criminal sale of a controlled substance in the second degree.

In August 1999, the City of Albany police employed a confidential informant (hereinafter CI) to conduct a controlled

buy of cocaine from defendant. In connection with this incident, defendant was arrested in December 2000 and found in possession of cocaine. As a result, in May 2001, defendant was indicted and charged with the crimes of criminal sale of a controlled substance in the second degree, criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the fourth degree. Following severance of the sale count from the possession counts, defendant was convicted of the sale count after a jury trial and pleaded guilty to the possession counts. He was sentenced, as a second felony offender, to an aggregate term of 12½ years to life in prison.

Defendant first alleges that the 21-month delay between his alleged commission of the August 1999 sale and the resulting May 2001 indictment constituted a deprivation of his due process rights. It has been held that "an unreasonable delay in prosecuting a defendant constitutes a denial of due process and that an unjustifiable delay in commencing prosecution may require dismissal even though no actual prejudice to the defendant is shown" (*People v Gallup*, 224 AD2d 838, 839 [1996]; *see People v Lesiuk*, 81 NY2d 485, 490 [1993]; *People v Singer*, 44 NY2d 241, 253 [1978]; *People v Rivera*, 298 AD2d 612, 613 [2002], *lv denied* 99 NY2d 619 [2003]). On the other hand, although it is the People's burden, in the face of protracted preindictment delay, to establish a good cause justification for the postponement (*see People v Lesiuk, supra* at 490; *People v Mangan*, 258 AD2d 819, 819 [1999], *lv denied* 93 NY2d 927 [1999]), "a determination made in good faith to defer commencement of the prosecution for further investigation or for other sufficient reasons, will not deprive the defendant of due process of law even though the delay may cause some prejudice to the defense" (*People v Singer, supra* at 254). In ascertaining the reasonableness of a delay in a particular case, we consider not only the length and professed explanation for the delay, but also the nature of the underlying charge, the duration of the defendant's related incarceration and any impairment to the defense resulting from the delay (*see People v Taranovich*, 37 NY2d 442, 445 [1975]; *People v Alger*, 23 AD3d 706, 707 [2005]; *People v Mangan, supra* at 819).

Applying the above principles to the facts herein, we note that the 21-month delay at issue was lengthy (*compare People v Townsend*, 270 AD2d 720 [2000]; *People v Mangan, supra*), thus placing the burden on the People to establish good cause for same. To that end, the People attempted to justify the delay by the need to protect the anonymity of the CI and maintain the integrity of the ongoing investigation into local narcotics traf-

ficking. Albany Police Detective James Lyman testified that the controlled purchase involving defendant was part of a larger investigation and interdiction effort by the Capital District Drug Enforcement Task Force. According to Lyman, the CI was integral to the investigation of other purported dealers and, had defendant been arrested or charged shortly after the controlled buy, there was a risk that the CI's identity would be exposed and the investigation compromised. Indeed, by Lyman's account, the CI in question was at least partly responsible for federal narcotics charges against several individuals. Finally, although the CI was arrested and removed from the investigation in May 2000, Lyman indicated that defendant was himself apprehended in December of that year only after unsuccessful attempts were first made to link him to other informants.

In our view, this evidence sufficiently supported the People's claim of good cause for the preindictment delay. Furthermore, although defendant was incarcerated for approximately 13 months of the time period under consideration, only five of those months were attributable to the charged offense, the remainder being related to a parole violation (*see People v Staton*, 297 AD2d 876, 877 [2002], *lv denied* 99 NY2d 565 [2002]; *People v Allah*, 264 AD2d 902, 903 [1999]). Additionally, defendant has not established that the delay impaired his defense or otherwise prejudiced him (*see People v Vernace*, 96 NY2d 886, 888 [2001]). Accordingly, mindful that the crime charged in count one of the indictment is a serious felony, we cannot conclude that Supreme Court erred in finding that the preindictment delay herein was reasonable under all the circumstances.

On a related point, we also discern no error in the manner in which Supreme Court conducted the *Singer* hearing. During defendant's cross-examination of Lyman, he refused to answer certain questions concerning details of the Task Force investigation as well as the identity of the CI. In response, Supreme Court ordered an in camera examination of the CI and Lyman in order to evaluate the information they had provided and ascertain the viability of the People's preferred reason for the preindictment delay. Inasmuch as the court provided defendant with the opportunity to submit questions to be asked of the witnesses and thereafter provided summaries of the in camera testimony to the defense, we conclude that Supreme Court struck the appropriate balance between defendant's right of confrontation and the need to preserve the confidentiality of

both the informant and the investigation (*cf.* CPL 240.50; *United States v Raddatz*, 447 US 667, 679 [1980]).[1]

Next, we disagree with defendant's claim that the jury's verdict on the sale count was contrary to the weight of the evidence. Although a contrary verdict would have been reasonable given the CI's dubitable credibility and the fact that the transaction took place out of public view in the CI's home (*see People v Walton*, 16 AD3d 903, 904 [2005], *lv denied* 5 NY3d 796 [2005]; *People v Zabala*, 290 AD2d 578, 579 [2002], *lv denied* 97 NY2d 735 [2002]), we nonetheless defer to the jury's superior ability to evaluate the credibility of the various witnesses and, accordingly, find the verdict to be supported by the evidence (*see generally People v Bleakley*, 69 NY2d 490, 495 [1987]).

We also find no error in Supreme Court permitting Lyman to testify as to what he overheard in a conversation between defendant and the CI during the cocaine sale. In contrast to the situation present in the authorities cited by defendant (*see e.g. People v Morgan*, 145 AD2d 442, 443 [1988]; *People v Carrasco*, 125 AD2d 695, 697 [1986]), Lyman's testimony was not used to "amplify" or provide "missing incriminatory flavor" to a largely inaudible tape recording of the conversation which had been presented to the jury. On the contrary, Supreme Court herein declared a tape recording of the transaction between defendant and the CI to be inaudible and properly precluded its presentation to the jury during the People's direct case (*see generally People v Brown*, 104 AD2d 1044 [1984]; *People v Mincey*, 64 AD2d 615, 615 [1978]).[2] Thereafter, Lyman testified as to what he contemporaneously overheard via the CI's transmitter as the CI and defendant transacted business. The purpose of Lyman's testimony was, thus, not to fill missing gaps in the tape recording, but to report on what he had heard as a direct listener to the conversation. Contrary to defendant's reasoning, the fact that there was an unsuccessful attempt to record that conversation does not render Lyman's testimony on the topic impermissible (*see Grieshaber v City of Albany*, 279 AD2d 232, 235 [2001], *lv denied* 96 NY2d 719 [2001]; *see also People v Torres*, 118 AD2d 821, 822 [1986], *lv denied* 68 NY2d 672 [1986]).

Defendant's remaining claims of reversible error have been considered and found unpersuasive.

---

**1.** Although the identities of the CI and the other purported targets of the investigation were eventually revealed to defendant via *Rosario* material, we note that Supreme Court was not made aware of this revelation until after the in camera examination had been conducted.

**2.** Defendant was later permitted to use the tape recording in an attempt to impeach Lyman concerning the content of the conversation between defendant and the CI.

Mercure, Spain, Carpinello and Mugglin, JJ., concur. Ordered that the judgment is affirmed.