*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  April 16, 2015                106150
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                        Respondent,

        v                                    MEMORANDUM AND ORDER

MICHAEL ALEXANDER,
                        Appellant.
_____

Calendar Date:  February 18, 2015

Before:  Peters, P.J., Lahtinen, Garry and Lynch, JJ.

_____

        Matthew C. Hug, Troy, for appellant.

        J. Anthony Jordan, District Attorney, Fort Edward (Brandon
P. Rathbun of counsel), for respondent.

_____

Garry, J.

        Appeal from a judgment of the County Court of Washington
County (McKeighan, J.), rendered May 6, 2013, upon a verdict
convicting defendant of the crime of attempted assault in the
second degree.

        In April 2012, defendant, an inmate in a correctional
facility, engaged in a fight with another inmate (hereinafter the
victim).  Defendant was charged in a four-count indictment and
convicted by a jury of attempted assault in the second degree.
County Court sentenced him as a second felony offender to a
prison term of 2 to 4 years.  Defendant appeals.

        Initially, defendant contends that he was deprived of due
process by a delay of approximately seven months between the

incident and the issuance of the indictment. An unreasonable and unjustified indictment delay violates a defendant's due process rights and may result in dismissal of the indictment, even when no prejudice results (see People v Lesiuk, 81 NY2d 485, 490 [1993]; People v Morris, 25 AD3d 915, 916 [2006], lvs denied 6 NY3d 851, 853 [2006]). The relevant factors in determining whether a delay was unreasonable are the same as those applied to speedy trial claims, including "the extent of the delay, reason for the delay, nature of the underlying charges, any extended pretrial incarceration and any indications of prejudice or impairment to the defense attributable to the delay" (People v Garcia, 46 AD3d 1120, 1120-1121 [2007], lv denied 10 NY3d 863 [2008]; accord People v Ruise, 86 AD3d 722, 722-723 [2011], lv denied 17 NY3d 861 [2011]; see People v Vernace, 96 NY2d 886, 887 [2001]). Here, the People offered no explanation for the delay. However, the seven-month period between the incident and the indictment was not egregiously long (see People v Staton, 297 AD2d 876, 876-877 [2002], lv denied 99 NY2d 565 [2002] [six months and 21 days]; People v Diaz, 277 AD2d 723, 724 [2000], lv denied 96 NY2d 758 [2001] [six months]; People v Allah, 264 AD2d 902, 902-903 [1999] [nine months]; People v Cooper, 258 AD2d 815, 816 [1999], lv denied 93 NY2d 1016 [1999] [seven months]). The charges against defendant were serious and, as he was already incarcerated, "the delay did not impose a further burden upon his liberty" (People v McCormick, 17 AD3d 785, 786 [2005]). As for prejudice, nothing in the record substantiates defendant's assertion that the delay prevented him from determining the identities of other inmates who might have witnessed the incident but could have been released or transferred in the interim (compare People v Johnson, 38 NY2d 271, 277 [1975]). Accordingly, we find that defendant was not deprived of his due process rights on this ground.

Defendant next contends that his conviction was not supported by legally sufficient evidence and was against the weight of the evidence. To convict defendant of attempted assault in the second degree, the People were required to prove that he intended to cause physical injury to another person and "engage[d] in conduct which tend[ed] to effect the commission of such crime" (Penal Law § 110.00; see Penal Law § 120.05 [7];

People v Gannon, 301 AD2d 873, 873 [2003]).[1]  The testimony established that several correction officers saw two inmates fighting with each other, throwing punches and struggling back and forth.  One of the officers testified that he saw a weapon that resembled an ice pick in the right hand of one of the inmates, which that inmate wielded about four times in a downward striking motion toward the other participant; the other participant was making slashing motions from left to right.  The officer later identified defendant as the inmate he had seen with the ice pick weapon.  Officers interrupted the fight, ordered both inmates to lie on the ground and placed them in restraints.  When defendant was assisted to his feet, a sergeant observed a weapon resembling an ice pick on the floor where defendant had been lying.  A weapon with a razor blade was found under the victim.  Defendant suffered several straight-edged lacerations that were consistent with the razor blade, while the victim sustained multiple puncture wounds and scratches to his head and upper torso that were consistent with the weapon that looked like an ice pick.

Defendant offered a different account, testifying that he was suddenly attacked by an inmate wielding an ice pick.  While defendant attempted to fend off this attack, he felt himself being cut by a different weapon employed by another individual.  He was unable to identify either of these attackers, and the inmate with the ice pick ran away when correction officers approached.  Defendant turned around and began fighting with the first person he found behind him, who proved to be the victim.  Defendant explained, "I [was] already upset.  So whoever was behind me [was] getting it."  He stated that he did not possess a weapon, was left-handed and was not ambidextrous.  We find that the evidence, viewed in the light most favorable to the People, is legally sufficient to establish "that defendant intended to cause physical injury to another inmate and engaged in conduct tending to effect commission of that crime" (People v Gannon, 301 AD2d at 873; see People v Hawkins, 290 AD2d 812, 813 [2002], affd

_____

[1]  Defendant stipulated that he was a previously convicted felon and was incarcerated in a correctional facility when the incident occurred (see Penal Law § 120.05 [7]).

99 NY2d 592 [2003]). Further, although another verdict would not have been unreasonable, viewing the evidence in a neutral light and deferring to the jury's credibility determinations, we are satisfied that the verdict was not against the weight of the evidence (see People v Chasey, 5 AD3d 815, 816-817 [2004], lv denied 2 NY3d 797 [2004]; see generally People v Bleakley, 69 NY2d 490, 495 [1987]).

We find no merit in defendant's contention that his state and federal due process rights were violated when he was shackled during trial. Because of the risk of prejudice, a defendant has a right to be free of visible restraints during criminal proceedings unless the trial court states a case-specific reason for their use (see Deck v Missouri, 544 US 622, 624 [2005]; People v Best, 19 NY3d 739, 743 [2012]; People v Clyde, 18 NY3d 145, 153-154 [2011], cert denied ___ US ___, 132 S Ct 1921 [2012]). Here, County Court failed to state its reasons for requiring defendant to wear leg shackles. However, the record reveals that the restraints were not visible, nor were they otherwise called to the jury's attention. Before trial, the People requested that defendant wear restraints during the trial because of his lengthy disciplinary history and the serious nature of his offense. Defense counsel objected based upon defendant's appropriate behavior during pretrial proceedings. County Court agreed that defendant's conduct had been "professional" and deferred its decision pending review of his disciplinary history. At the beginning of trial, the People renewed their request and defense counsel repeated his objection. County Court ruled that defendant's hand restraints should be removed but that his leg shackles should be retained, stating that "[t]hey are beneath the desk. The jurors can't see them."[2] Defense counsel neither objected nor disagreed with the statement that the jury would be unable to see defendant's shackles; instead, he requested that the court require everyone to remain seated when the jury entered and exited the courtroom, so that jurors would not hear the sound made by the shackles when

_____

[2] Although not revealed in the record, the People state on appeal that the desks in the courtroom are constructed with wooden skirting that blocks any view of their undersides.

defendant changed position. The court granted this request and, throughout the trial, excused the jury before defendant took the stand, left the stand or was remanded to the custody of correction officers. Nothing in the record suggests that the shackles were ever visible to the jurors or that any other circumstances could have led them to infer that defendant's legs were restrained (compare People v Cruz, 17 NY3d 941, 944-945 [2011]; People v Jenner, 39 AD3d 1083, 1087-1088 [2007], lv denied 9 NY3d 845 [2007]; People v Roraback, 242 AD2d 400, 403 [1997]). On this record, we thus find that there is no reasonable possibility that the use of shackles resulted in prejudice to defendant, and he was not deprived of a fair trial on this ground.

County Court did not abuse its discretion in denying defendant's untimely request for a missing witness charge. A request for such a charge "must be raised as soon as practicable so that the court can appropriately exercise its discretion and the parties can tailor their trial strategy to avoid 'substantial possibilities of surprise'" (People v Gonzalez, 68 NY2d 424, 428 [1986], quoting McCormick, Evidence § 272 at 806 [3d ed 1984]; accord People v Turner, 73 AD3d 1282, 1283-1284 [2010], lv denied 15 NY3d 896 [2010]). Here, the request was not made until after the close of proof and was thus untimely (see People v Rodney, 79 AD3d 1363, 1365 [2010], lv denied 19 NY3d 1105 [2012]).[3]

Finally, defendant contends that the verdict was inherently self-contradictory in that the instructions given to the jury on the charge on which defendant was convicted were identical to those given for a separate charge upon which he was acquitted. As defendant did not raise this assertion before the jury was discharged and County Court had no opportunity to address it, it is unpreserved (see People v Muhammad, 17 NY3d 532, 541 n 5 [2011]; People v Rodwell, 122 AD3d 1065, 1068 [2014]; People v Dale, 115 AD3d 1002, 1006-1007 [2014]). In any event, our review reveals that the instructions on the two charges were not, in

---

[3]    Nor did defendant reveal that the proposed testimony from the two witnesses met the necessary prerequisites to support the charge (see DeVito v Feliciano, 22 NY3d 159, 165-166 [2013]).

fact, identical.  As charged, "a theoretical defendant" could have been guilty of the first offense, but not of the second (People v Muhammad, 17 NY3d at 543; see People v Elmy, 117 AD3d 1183, 1184 [2014]).  Thus, we find no reason to take corrective action in the interest of justice (see People v Rolfe, 83 AD3d 1217, 1218 [2011], lv denied 17 NY3d 809 [2011]; People v Pearson, 69 AD3d 1226, 1227 [2010], lv denied 15 NY3d 755 [2010]).

Peters, P.J., Lahtinen and Lynch, JJ., concur.


ORDERED that the judgment is affirmed.




ENTER:

Robert D. Mayberger
Clerk of the Court