People v Tallon (2019 NY Slip Op 06538)





People v Tallon


2019 NY Slip Op 06538


Decided on September 12, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: September 12, 2019

107759

[*1]The People of the State of New York, Respondent,
v
Dante A. Tallon, Appellant.

Calendar Date: August 21, 2019

Before: Garry, P.J., Egan Jr., Clark, Mulvey and Pritzker, JJ.


M. Elizabeth Coreno, Saratoga Springs, for appellant, and appellant pro se.
Craig P. Carriero, District Attorney, Malone (Jennifer Hollis of counsel), for respondent.



Pritzker, J.
Appeal from a judgment of the County Court of Franklin County (Main Jr., J.), rendered June 29, 2015, upon a verdict convicting defendant of the crimes of criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree.

 Defendant was convicted after trial of criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree stemming from a controlled buy of heroin by a confidential informant (hereinafter CI). Defendant was sentenced to concurrent prison terms of eight years, to be followed by two years of postrelease supervision. Defendant appeals, and we affirm.

 Defendant's legal sufficiency claim is unpreserved for our review as he made only a general motion for a trial order of dismissal (see People v Vega, 170 AD3d 1266, 1267 [2019], lv denied 33 NY3d 1074 [2019]; People v Wynn, 149 AD3d 1252, 1254 [2017], lv denied 29 NY3d 1136 [2017]). "Nevertheless, in conducting our weight of the evidence review, we must [determine] whether each element of the charged crimes was proven beyond a reasonable doubt" (People v Gill, 168 AD3d 1140, 1140 [2019], citing People v Williams, 163 AD3d 1160, 1161 [2018], lvs denied 32 NY3d 1170, 1179 [2019]). "A weight of the evidence review requires this Court to first determine whether, based on all the credible evidence, a different finding would not have been unreasonable. Where a different finding would not have been unreasonable, [this Court] must weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Taft, 145 AD3d 1090, 1091-1092 [2016] [internal quotation marks, brackets and citation omitted], lv denied 29 NY3d 953 [2017]; see People v Bleakley, 69 NY2d 490, 495 [1987]).

 Chad Tavernia, an investigator with the State Police, testified that the CI contacted him on February 25, 2014 and indicated that he would be able to purchase heroin from defendant the following day. Tavernia explained that, the next day, he met the CI in the afternoon and, prior to the controlled buy, he performed a detailed search of the CI. After the search, which did not reveal any money or contraband, Tavernia set the CI up with a small electronic recorder and a transmitter, which allowed Tavernia and other law enforcement to listen to the controlled buy. Tavernia testified that he dropped the CI off at a local Stewart's shop and then drove to a nearby parking lot to observe the CI. After the CI got into a vehicle and drove away, Tavernia went to the prearranged meeting spot and waited for the CI to return after completing the buy. When the CI did not return to the meeting spot, Tavernia called him and the CI told him that defendant would be driving past the meeting spot. According to Tavernia, shortly thereafter a vehicle drove by that Tavernia recognized as the one that the CI got into at Stewart's, and he recognized the driver to be defendant. Tavernia then received a call from another member of law enforcement involved in the controlled buy, who told him that the CI was in the car with him. After they reconvened, the CI gave Tavernia a quantity of packages wrapped in a rubber band with stamps on the packages that read "Hooker" and had the logo of a woman hanging on a pole. A forensic scientist with the State Police testified that testing revealed that the packages contained heroin.

 The CI testified that he had been caught selling heroin and was participating in controlled buys to receive a reduced sentence. He explained that he had known defendant for approximately two years and had sold heroin for him in the past. The CI stated that defendant called him two days before the controlled buy to tell the CI that he would soon have heroin to sell. According to the CI, he called Tavernia and informed him about this, and he and Tavernia made plans to meet prior to the controlled buy. The CI corroborated Tavernia's testimony that he was searched and outfitted with a recording device and transmitter and testified that Tavernia gave him $200. The CI testified that defendant picked him up at Stewart's and drove the pair to the CI's house to complete the drug buy. The CI further testified that he put $200 in the middle console of defendant's vehicle, and defendant then gave him a bundle of heroin. The CI's description of the packaging of the heroin matched that of Tavernia's. The CI explained that he then exited defendant's vehicle and defendant drove away, at which time the CI started walking to where he was supposed to meet Tavernia. The CI stated that he did not reach the meeting spot because another police officer picked up him and brought him to Tavernia, at which point he gave Tavernia the bundle of heroin, the transmitter and the recording device. Michael Fleury, an investigator with the Franklin County District Attorney's office, who was also involved in the controlled buy, testified that he surveilled the controlled buy from the time that defendant picked the CI up at Stewart's and that he never lost sight of the vehicle until after the CI got out of it at his residence. Fleury testified that, after defendant drove away, he picked up the CI to get him out of the area and immediately took the CI to meet up with Tavernia.

 Defendant testified that, on the day of the alleged controlled buy, he got a call from the CI, whom defendant had known for approximately two years, and the CI asked defendant to pick him up from Stewart's. Defendant denied that he and the CI had a plan for defendant to provide the CI with heroin. Defendant testified that he brought the CI home and that, while they were in the car together, he did not give anything to the CI, nor did the CI give anything to him. Defendant denied discussing heroin with the CI and explained that he did not go into the CI's residence because he had to finish some errands. Although another verdict would not have been unreasonable inasmuch as the jury could have credited defendant's version of the events (see People v Sostre, 172 AD3d 1623, 1626 [2019]; People v Yedinak, 157 AD3d 1052, 1055 [2018]), viewing the evidence in a neutral light and deferring to the credibility determinations made by the jury, we find the verdict to be supported by the weight of the evidence (see People v Chaneyfield, 157 AD3d 996, 1000 [2018], lv denied 31 NY3d 1012 [2018]; People v Alexander, 127 AD3d 1429, 1431 [2015], lv denied 25 NY3d 1197 [2015]).

 Defendant further contends that he received the ineffective assistance of counsel based upon many alleged failings of trial counsel,[FN1] only one of which warrants discussion. As to this argument, defendant contends that his trial attorney was biased against him because he made an inappropriate comment during voir dire of prospective jurors. We have reviewed this comment and, although it was improper, it was said outside of the presence of the prospective jurors in the context of defendant's trial counsel attempting to excuse defendant's inappropriate conduct of talking to a juror and does not reveal any bias against defendant. We have reviewed defendant's remaining challenges to trial counsel's effectiveness and find them to be without merit. Accordingly, the totality of the record reveals that, despite trial counsel's improper comment, defendant received meaningful representation (see People v Flower, 173 AD3d 1449, 1457 [2019]; People v Horton, 173 AD3d 1338, 1342 [2019]).

 We are similarly unpersuaded by defendant's challenge to his sentence as harsh and excessive. Inasmuch as defendant's sentence "falls within the permissible statutory range, modification of the sentence may occur only in the interest of justice if defendant establishes the existence of extraordinary circumstances or an abuse of discretion" (People v Brown, 46 AD3d 949, 952 [2007] [citations omitted], lv denied 10 NY3d 808 [2008]; see People v Crippen, 156 AD3d 946, 953 [2017]). Defendant has made no such showing here.

 Garry, P.J., Egan Jr., Clark and Mulvey, JJ., concur.





ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: Defendant contends, pro se, that he was deprived of an adequate appeal due to an insufficient appeal record before this Court, specifically a "mere 45 page[]" appendix. The proper procedural vehicle for such a claim is an application for a writ of error coram nobis (see People ex rel. DeFreitas v Callado, 172 AD3d 1811, 1812 [2019]; People ex rel. Williams v Griffin, 114 AD3d 976, 976 [2014]). We note that, even if defendant's appendix is insufficient, because the original record is before this Court, this Court has the proper means to review defendant's appeal and has done so in our weight of the evidence review (see generally People v Gethers, 151 AD3d 1398 [2017], lv denied 30 NY3d 980 [2017]; People v Wilson, 71 AD3d 1333 [2010]).