2002 ND 202

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Shaun Dean BINGAMAN, Defendant and Appellant.**

No. 20010287.

Supreme Court of North Dakota.

Dec. 20, 2002.

Steven James Simonson, Grand Forks, ND, for defendant and appellant.

Sonja Clapp (argued), Assistant State's Attorney, and Michelle Schulz (appeared), third-year law student, Grand Forks, ND, for plaintiff and appellee.

MARING, Justice.

[¶ 1] Shaun Bingaman appeals from the criminal judgment dated November 14, 2001, convicting him of manslaughter. We affirm.

[¶ 2] On October 2, 2000, a homicide occurred outside the Ambassador Motel in Grand Forks, North Dakota. On that day, the victim, Timothy Kingsbury, and his friend, Gary Burnett, went to the Ambassador Motel, which was Bingaman's residence, to resolve a dispute Kingsbury and Bingaman had over some money. A confrontation between Kingsbury, Burnett, and Bingaman ensued in the parking lot, with punches being thrown and Kingsbury being hit in the face.

[¶ 3] David Lewandowski, who also rented a room at the Ambassador Motel, came out to the parking lot and became involved in the confrontation. Lewandowski was under the impression that there were arrest warrants outstanding on Kingsbury and that he should detain Kingsbury until the police arrived to arrest him. Kingsbury and Lewandowski ended up on the ground with Lewandowski holding Kingsbury in a bear hug. In an attempt to get Lewandowski to release Kingsbury, Burnett kicked Lewandowski in the face. Burnett then left the scene. While Lewandowski and Kingsbury were still on the ground, Kingsbury allegedly kicked Bingaman in the leg. Bingaman responded by kicking Kingsbury in the head several times. Lewandowski continued to hold Kingsbury in a bear hug, although the exact position of the bear hug varies in the testimony.

[¶ 4] While Lewandowski had Kingsbury in the bear hug, Bingaman knelt down and placed Kingsbury's head in a head lock. The bear hug and head lock continued until the Grand Forks Police arrived. When the police arrived, they ordered Lewandowski and Bingaman to release their holds on Kingsbury. Kingsbury was released, but he appeared to be unconscious, having only a faint pulse. Soon, medical technicians arrived and CPR was performed. Kingsbury was transported to the hospital where resuscitation efforts continued. Kingsbury regained a pulse; however, over the next three days, doctors determined that Kingsbury was brain dead. Kingsbury was removed from life support and died on October 6, 2000. An autopsy later listed Kingsbury's cause of death as lack of oxygen to the brain.

[¶ 5] Bingaman and Lewandowski were each charged with the crime of manslaughter. The State moved to join the two defendants, so both cases would be heard

in one trial. Both defendants responded opposing joinder and alleged that joinder would be prejudicial. A hearing was held on the motions, and the trial court granted the State's motion to join the parties. The trial of Lewandowski and Bingaman began on October 2, 2001. At the close of evidence, Lewandowski was convicted of negligent homicide and sentenced to five years, with all but one year suspended. Bingaman was convicted of manslaughter and sentenced to ten years, with two years suspended. Bingaman appeals from his manslaughter conviction.

[¶ 6] Bingaman argues the trial court erred in granting the State's motion to join the two defendants for trial because he was prejudiced by the joinder. We disagree.

I.

[¶ 7] The State contends that since Bingaman objected to joinder before trial, but did not make a motion for severance at the close of evidence, the severance issue has not been properly preserved. Our Court has held that a motion for severance must be renewed at the close of evidence in order for the objection to joinder to survive. *See State v. Dymowski,* 459 N.W.2d 777, 784 (N.D.1990) (holding that a severance motion will be deemed waived if it is not renewed at the end of the evidence).

[¶ 8] Bingaman does not dispute the fact that he failed to bring a motion to sever at the conclusion of the evidence and, therefore, the issue is not properly preserved for appeal. He argues, instead, that the joinder of the parties constituted obvious error under N.D.R.Crim.P. 52(b). *See Dymowski,* 459 N.W.2d at 780 (concluding that even if the severance motion is not properly preserved, this Court still may reverse the trial court if the joinder of parties constituted obvious error). Binga-

man argues on appeal that because he and Lewandowski were joined as defendants, he did not get a fair trial. He contends that the prejudice occurred because: 1) he and Lewandowski had mutually antagonistic defenses; 2) the evidence presented by the State and by Lewandowski created a biased jury against Bingaman and resulted in a "popularity contest" between the two defendants; and 3) it was unfair for the jury to convict him of manslaughter while only convicting Lewandowski of negligent homicide because none of the medical examiners could attribute Kingsbury's death exclusively to one defendant or the other. Bingaman's arguments are without merit.

[¶ 9] Generally, issues not properly preserved at the trial court level will not be heard on appeal. *See State v. Yineman,* 2002 ND 145, ¶ 21, 651 N.W.2d 648. However, under N.D.R.Crim.P. 52(b), this Court is allowed to notice obvious errors which are revealed in the record. *See Yineman,* at ¶ 21. "Obvious errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." N.D.R.Crim.P. 52(b). Our Court has stated that it will only exercise its power to notice obvious error in "exceptional circumstances where the accused has suffered serious injustice." *State v. Johnson,* 2001 ND 184, ¶ 12, 636 N.W.2d 391. We exercise our power to find obvious error cautiously and have very rarely found obvious error under Rule 52(b). *See Johnson,* at ¶ 12. "An alleged error does not constitute obvious error unless there is a clear deviation from an applicable legal rule under current law." *State v. Miller,* 2001 ND 132, ¶ 25, 631 N.W.2d 587. In order to prove that obvious error occurred, Bingaman would have the burden of showing: "(1) error, (2) that is plain, and (3) that affects substantial rights." *Id.* To determine whether an obvious error has been made, this Court

will "examine the entire record and the probable effect of the alleged error in light of all the evidence." *Johnson*, at ¶ 12. We have reviewed the record in this case and conclude that Bingaman has not met his burden under N.D.R.Crim.P. 52(b).

## II.

### Prejudicial Joinder

### A.

[¶ 10] Rule 8(b), N.D.R.Crim.P., provides for two or more defendants to be charged in the "same indictment, information, or complaint if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting one or more offenses." Rule 13, N.D.R.Crim.P., further gives the court the power to "order two or more indictments, informations, or complaints to be tried together if the offenses and the defendants, if there is more than one, could have been joined in a single indictment, information, or complaint." Joinder of defendants is proper when the defendants are linked together by their participation in a common transaction or act. *See* Explanatory Note, N.D.R.Crim.P. 8 (citing *United States v. Brennan*, 134 F.Supp. 42 (D.Minn.1955)). In this case, it was undisputed that both defendants were present and did participate in the fight with Kingsbury which occurred outside of the Ambassador Motel.

[¶ 11] However, even when Rules 8 and 13, N.D.R.Crim.P., are initially met and joinder is granted, severance of the parties may still be necessary if the court deems the joinder to be substantially prejudicial to one or more of the parties. Rule 14, N.D.R.Crim.P., states that, "[i]f it appears that a defendant or the prosecution is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever relief justice requires." *See State v. Wamre*, 1999 ND 164, ¶ 29, 599 N.W.2d 268. The trial court's duty under Rule 14 is a continuing one, and it must continue to assess whether severance is necessary in light of developments during the trial. *See Dymowski*, 459 N.W.2d at 781. The purpose of Rule 14 is to "promote economy and efficiency and to avoid a multiplicity of trials, where these objectives can be achieved without substantial prejudice to the right of defendants to a fair trial." *Dymowski*, at 779.

### B.

[¶ 12] Bingaman first contends that the cases should have been severed because he and Lewandowski had mutually antagonistic defenses. Bingaman argues that because the medical experts testifying in the case could not determine which specific act killed the victim, Lewandowski's mutually antagonistic defense strategy was convincing the jury that it was Bingaman's head lock and not Lewandowski's bear hug that caused the victim's death.

[¶ 13] This Court has stated "the mere presence of hostility among defendants or the desire of one to exculpate himself by inculpating another have both been held to be insufficient grounds to require separate trials." *State v. Erickson*, 231 N.W.2d 758, 763 (N.D.1975) (citing *Dauer v. United States*, 189 F.2d 343 (10th Cir.1951)). Moreover, our Court has said that in order to rise to the level of being mutually antagonistic, defenses must be "antagonistic to the point of being mutually exclusive or irreconcilable." *Dymowski*, 459 N.W.2d at 785 (quoting *United States v. Berkowitz*, 662 F.2d 1127, 1133 (5th Cir.1981)). Bingaman's defense that it was Lewandowski's bear hug that caused the death of

Kingsbury was not precluded by Lewandowski's defense that it was Bingaman's head lock which caused the death. Although the defenses in this case were to some extent antagonistic, they were clearly not mutually exclusive or irreconcilable, because the jury had the option to, and in fact did, find that *both* the bear hug and the head lock caused Kingsbury's death.

[¶ 14] Further, even if the defenses were mutually antagonistic, the United States Supreme Court has held that mutually antagonistic defenses are not prejudicial per se. *See Zafiro v. United States,* 506 U.S. 534, 538, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). Rather, severance due to antagonistic defenses should only be granted when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539, 113 S.Ct. 933. The Court of Appeals for the Eighth Circuit explained:

> even blame-shifting on the part of the defendants "is not a sufficient reason for severance," ... "Co-defendants are often hostile to one another, and one will try frequently to 'point the finger,' to shift the blame, or to save himself at the expense of the other." Such tactics rise to the level of antagonistic defenses requiring severance "only when 'there is a danger that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty.'"

*United States v. Basile,* 109 F.3d 1304, 1309–10 (8th Cir.1997) (citations omitted). In order for Bingaman to prove that the trial court made an error by continuing the joinder of the two parties, he would have to demonstrate "severe or compelling prejudice" by showing "that his defense was irreconcilable with that of the codefendant or that the jury was unable to compartmentalize the evidence." *Id.* at 1310

(quoting *United States v. Bordeaux,* 84 F.3d 1544, 1547 (8th Cir.1996)). Bingaman has not shown he was prejudiced due to antagonistic defenses.

### C.

[¶ 15] Bingaman further claims he was prejudiced by the joinder because during trial, Lewandowski's counsel made personal comparisons of the two defendants, trying to persuade the jury that Bingaman, not Lewandowski, was the "bad guy" and that Lewandowski was just a big, mentally disabled guy trying to do his civic duty. Bingaman claims it was because of these "unfair personal comparisons" that the jury found him more responsible for the crime.

[¶ 16] During trial, Bingaman had both the assistance of his own counsel and a limiting instruction given by the court to assure that the joint trial would not result in any prejudice. Before final arguments, the trial court met with the Assistant State's Attorney, Bingaman's attorney, and Lewandowski's attorney to discuss the proposed jury instructions. At that time, Lewandowski's attorney raised some concerns about how the jury would handle the two defendants when reaching its verdict. The trial court outlined the safeguards it was including in the jury instructions to try to make it clear to the jury that there were two separate defendants and that the jury needed to consider each one of the defendants separately. These safeguards included separate essential element instructions for each defendant (*i.e.,* "Essential Elements of Manslaughter for Shaun Bingaman" and "Essential Elements of Manslaughter for David Lewandowski"); separate captions for each case; and separate jury verdict forms for each defendant. Moreover, the trial court and counsel agreed to an instruction captioned "Separate Cases" which read, "[t]hese are two cases which are being tried at the same

time. You should view all the evidence and law and reach a decision as to each Defendant." It was agreed that the "Separate Cases" instruction along with the ability for counsel to present this distinction to the jury in closing arguments would be sufficient to preserve the separate status of each defendant.

[¶ 17] The trial court went to great lengths, by including specific jury instructions and taking additional safeguards, to limit any prejudicial effect the joinder of parties might have had. The explanatory note to N.D.R.Crim.P. 14 points out that although "a danger of prejudice exists in all trials involving multiple defendants, the general rule is that public policy considerations in the administration of justice require that the severance be denied in the absence of a clear-cut showing of prejudice against which the trial court will not be able to afford protection." Bingaman has not made such a showing.

### D.

[¶ 18] Bingaman's final contention that the joinder prejudiced him focuses on the fact that the jury handed down disparate verdicts-Bingaman's for manslaughter and Lewandowski's for negligent homicide. Bingaman claims that, "[t]he medical experts could not determine that [Bingaman] was any more culpable than [Lewandowski] in the death...." Bingaman misapplies the medical experts' testimony because they testified as to causation of the victim's death and not as to culpability. It is true that the medical evidence was inconclusive as to the cause of the victim's death. Both Dr. Mizell and Dr. Carter testified that the death could have been caused by Bingaman's head lock, Lewandowski's bear hug, or a combination of both. However, even though the exact act that led to the victim's death could not be pinpointed, the jury was not required to

acquit both defendants. North Dakota Century Code § 12.1–02–05 states that, "[c]ausation may be found where the result would not have occurred but for the conduct of the accused operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the accused clearly insufficient." Nor was the jury required to find both defendants guilty of the same crime. *See* C.T. Drechsler, Annotation, *Inconsistency of Criminal Verdicts as between two or more Defendants Tried Together*, 22 A.L.R.3d 717, § 13 (2002); *see also People v. Pickens*, 269 Cal.App.2d 844, 75 Cal.Rptr. 352, 357 (1969) (commenting that it is in no way "unusual or improper for a jury to find codefendants in a joint trial guilty of different offenses or different degrees of the same offense"). Conviction of a co-defendant of a lesser crime does not require that the other defendant's conviction be set aside. *See* Drechsler, *supra* § 6 (discussing several cases which stand for the proposition that "verdicts as between two or more criminal defendants tried together will not be held reversibly inconsistent if, upon a consideration of the facts and circumstances of the case, they can be explained or reconciled on any rational basis"). The differing verdicts for Bingaman and Lewandowski could easily be explained away by the jury finding two different levels of culpability and matching up each with its corresponding crime. Under N.D.C.C. § 12.1–16–02, "[a] person is guilty of manslaughter, a class B felony, if he *recklessly* causes the death of another human being." (Emphasis added.) In contrast, to be guilty of negligent homicide, N.D.C.C. § 12.1–16–03 requires that a person *"negligently* causes the death of another human being." (Emphasis added.)

[¶ 19] The evidence in this case certainly supports the jury finding Bingaman's level of culpability reckless and Lewandowski's negligent. This would result

in corresponding convictions of manslaughter and negligent homicide for Bingaman and Lewandowski, respectively. Therefore, Bingaman's contention that the two verdicts were "not consistent with the objective evidence presented at trial," is unfounded. As such, Bingaman has not demonstrated any prejudice affecting his substantial rights.

[¶ 20] Therefore, even if Bingaman had made a motion for severance at the close of evidence and properly preserved the issue for appeal, Bingaman has failed to establish any prejudice under N.D.R.Crim.P. 14 or that the trial court abused its discretion by the joinder. *See State v. Purdy*, 491 N.W.2d 402, 406 (N.D. 1992) (establishing that this Court will not overturn a trial court's refusal to grant a separate trial absent an abuse of discretion).

[¶ 21] We conclude Bingaman did not establish he was prejudiced because he and Lewandowski had defenses that were to some extent antagonistic or because Lewandowski tried to persuade the jury Bingaman was the bad guy. Therefore we conclude, under N.D.R.Crim.P. 52(b), Bingaman has not shown that the trial court made an obvious error or that he was in any way prejudiced by the initial joinder or continuing joinder of Lewandowski and him as co-defendants at trial. For these reasons, we affirm the criminal judgment.

[¶ 22] VANDEWALLE, C.J., and NEUMANN and KAPSNER, JJ., concur.

[¶ 23] The Honorable JAMES H. O'KEEFE, Surrogate Judge, sitting in place of SANDSTROM, J., disqualified. The Honorable JAMES H. O'KEEFE participated in the oral argument, but did not participate in this decision.