2010 ND 19

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Antonio Phillip STRIDIRON, Defendant and Appellant.**

**State of North Dakota, Plaintiff and Appellee**

v.

**Bradley A. Davis, Defendant and Appellant.**

Nos. 20080285, 20090093.

Supreme Court of North Dakota.

Jan. 26, 2010.

Rehearing Denied March 16, 2010.

Timothy C. Wilhelm, Assistant State's Attorney, Minot, N.D., for plaintiff and appellee.

Robert Wade Martin, North Dakota Public Defenders' Office, Minot, N.D., for defendant and appellant Antonio Phillip Stridiron.

Joshua Buchanan Rustad, North Dakota Public Defender's Office, Williston, N.D., for defendant and appellant Bradley A. Davis.

MARING, Justice.

[¶ 1] In consolidated appeals, Antonio Phillip Stridiron and Bradley A. Davis appeal from criminal judgments entered on jury verdicts finding Stridiron guilty of class AA felony murder and Davis guilty of class C felony aggravated assault. We affirm, concluding the district court did not err in its pretrial and trial rulings and the evidence is sufficient to support Davis's conviction.

I

[¶ 2] In the early morning hours of July 29, 2007, the body of Joshua Velasquez was found in an alley across the street from a Minot duplex where he had been attending a party. Stridiron and Davis, who are African–American, resided in the duplex. Velasquez was Hispanic. Following an investigation, Davis was charged with class C felony aggravated assault in violation of N.D.C.C. § 12.1–17–02 and Stridiron was charged with class

AA felony murder in violation of N.D.C.C. § 12.1–16–01. The State alleged that an altercation occurred at the party and Davis and Stridiron followed Velasquez across the street where Davis struck him with a garden tool containing serrated blades and Stridiron shot him with a handgun.

[¶ 3] The district court, over Davis's objection, granted the State's motion to join the cases for trial. Before trial, the court also denied Stridiron's motion for a public opinion survey and for a change of venue based on his allegation of prejudicial pretrial publicity. During the selection of a jury, the State exercised a peremptory challenge excusing the only African–American juror in the jury pool, and the court denied Stridiron and Davis's challenge to the State's action based on *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). During the trial, the court refused to allow Stridiron to present evidence from a witness he claimed would testify that Davis admitted to her that Davis killed Velasquez. The jury returned verdicts finding Stridiron and Davis guilty as charged.

## II

[¶ 4] Davis argues the district court erred in granting the State's pretrial motion to join for trial his aggravated assault case with Stridiron's murder case, and in failing to sever the cases when he renewed his objection during voir dire.

[¶ 5] Before trial, the State moved to join the cases because joinder "will permit economy and efficiency and will avoid multiplicity of trials in a situation in which these objectives can be reached without substantial prejudice to the rights of the ... defendants." Davis objected, arguing he would be prejudiced by Stridiron's attempts to implicate him in the murder and by the introduction of evidence relevant to the murder charge but irrelevant to his

aggravated assault charge. The district court granted the State's motion, concluding Davis had failed to establish he would be prejudiced by joinder and limiting instructions given to the jury would sufficiently address Davis's concerns. During voir dire, Davis renewed his objection and sought to sever the cases based on a morning newspaper article indicating the defendants were "being tried together for alleged roles in death of Velasquez." Based on the admonitions given earlier to the jury to not read about, listen to, or view news accounts of the case, the court denied Davis's motion.

[¶ 6] In *State v. Bingaman*, 2002 ND 202, ¶¶ 10–11, 655 N.W.2d 51, this Court explained:

Rule 8(b), N.D.R.Crim.P., provides for two or more defendants to be charged in the "same indictment, information, or complaint if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting one or more offenses." Rule 13, N.D.R.Crim.P., further gives the court the power to "order two or more indictments, informations, or complaints to be tried together if the offenses and the defendants, if there is more than one, could have been joined in a single indictment, information, or complaint." Joinder of defendants is proper when the defendants are linked together by their participation in a common transaction or act. *See* Explanatory Note, N.D.R.Crim.P. 8 (citing *United States v. Brennan*, 134 F.Supp. 42 (D.Minn.1955)).

However, even when Rules 8 and 13, N.D.R.Crim.P., are initially met and joinder is granted, severance of the parties may still be necessary if the court deems the joinder to be substantially prejudicial to one or more of the parties. Rule 14, N.D.R.Crim.P., states that, "[i]f

it appears that a defendant or the prosecution is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever relief justice requires." *See State v. Wamre,* 1999 ND 164, ¶ 29, 599 N.W.2d 268. The trial court's duty under Rule 14 is a continuing one, and it must continue to assess whether severance is necessary in light of developments during the trial. *See [State v.] Dymowski,* 459 N.W.2d [777,] 781 [ (N.D.1990) ]. The purpose of Rule 14 is to "promote economy and efficiency and to avoid a multiplicity of trials, where these objectives can be achieved without substantial prejudice to the right of defendants to a fair trial." *Dymowski,* at 779.

We will not set aside a district court's decision to consolidate offenses or its refusal to grant a separate trial unless the defendant establishes a clear abuse of discretion. *See Wamre,* 1999 ND 164, ¶ 30, 599 N.W.2d 268; *State v. Purdy,* 491 N.W.2d 402, 406 (N.D.1992). A district court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a rational mental process leading to a reasoned determination. *State v. Paul,* 2009 ND 120, ¶ 6, 769 N.W.2d 416.

[¶ 7] Here, Stridiron and Davis were charged with participating in the same series of acts constituting more than one offense which occurred contemporaneously and were directed toward the same victim. Davis concedes "the consolidation of these matters provided judicial convenience and economy as the witnesses were largely the same." Davis contends prejudice is demonstrated by the newspaper article which stated the defendants were being tried for their roles in Velasquez's death, exhibits introduced in evidence that were relevant to Stridiron's murder charge but not to the aggravated assault charge, the "ability of the other defendant's attorney to cross examine" the defendant, and Stridiron's lawyer's attempts through the questioning of a witness to implicate Davis in the murder of Velasquez.

[¶ 8] We reject Davis's arguments. Davis has failed to link the allegedly misleading newspaper article with having any effect on the jury. The district court gave limiting jury instructions on the proper use of the murder evidence, and a jury is generally presumed to follow a court's instructions. *See, e.g., State v. Gibbs,* 2009 ND 44, ¶ 21, 763 N.W.2d 430. Moreover, " '[b]are allegations that a defendant would stand a better chance of acquittal in a separate trial or that there may be some "spillover effect" from evidence against a codefendant is insufficient to compel severance.' " *Wamre,* 1999 ND 164, ¶ 30, 599 N.W.2d 268 (quoting *Purdy,* 491 N.W.2d at 405–06). The ability to cross-examine a codefendant does not demonstrate prejudice because this would be present in any case involving codefendants, and the rules specifically allow joint trials of codefendants under certain circumstances. Furthermore, we have said an attempt by one defendant to exculpate himself by inculpating another defendant is an insufficient ground to require separate trials. *See, e.g., Bingaman,* 2002 ND 202, ¶ 13, 655 N.W.2d 51.

[¶ 9] We conclude the district court did not abuse its discretion in joining the cases for trial and in refusing Davis's request for severance.

### III

[¶ 10] Stridiron argues the district court erred in denying his pretrial motion

for access to the names, addresses, and telephone numbers of the members of the prospective jury pool for purposes of submitting to them a public opinion survey to gauge any bias caused by media coverage of Velasquez's death and by actions of Velasquez's family and friends in initiating a "Justice For Joshua Velasquez" petition drive. Stridiron also argues the court erred in denying his companion motion for a change of venue based on prejudicial pretrial publicity generated by conventional media and online commentary.

[¶ 11] Rule 21(a), N.D.R.Crim. P., provides: "Upon the defendant's motion, the court must transfer the proceeding against the defendant to another county if the court is satisfied that so great a prejudice against the defendant exists in the transferring county that the defendant cannot obtain a fair and impartial trial there." We have said that "[p]ublicity per se is not necessarily prejudicial or damaging to a criminal defendant," and "[b]efore a change of venue because of pretrial publicity is proper, a defendant must show the publicity was in fact prejudicial." *State v. Ellis*, 2001 ND 84, ¶ 6, 625 N.W.2d 544. "The quantity of media coverage does not control a motion for change of venue; rather, the defendant must show there was prejudicial publicity which caused such bias that it would be impossible to select a fair and impartial jury." *Id.* While prejudice to a defendant may be so obvious that a change of venue may be ordered immediately, we generally prefer that a district court "wait until voir dire to determine whether it is possible to select a fair and impartial jury." *Id.* at ¶ 4. A motion for change of venue is addressed to the sound discretion of the district court, and its decision will not be reversed on appeal absent a showing of an abuse of discretion. *State v. Norman*, 507 N.W.2d 522, 526 (N.D.1993).

[¶ 12] This Court has suggested that "defendants submit qualified public opinion surveys, other opinion testimony, or any other evidence demonstrating community bias caused by the media coverage" to support a motion for change of venue. *State v. Erickstad*, 2000 ND 202, ¶ 9, 620 N.W.2d 136, *see also Ellis*, 2001 ND 84, ¶ 7, 625 N.W.2d 544; *State v. Austin*, 520 N.W.2d 564, 567 (N.D.1994). Although Stridiron attempted to follow this suggestion, the district court had prepared an extensive questionnaire for potential jurors addressing their personal data and prior knowledge of the case, subjects addressed by Stridiron's proposed public opinion survey. The questionnaire asked whether the jurors had "seen or heard anything about the alleged offense from the news media, internet, or from other sources, including family or friends"; whether they had "personal knowledge of the facts or charges"; whether "race or ethnicity" of the victim and defendants would be "important to you in deciding the facts of this case"; and whether they knew the defendants, the victim, or the victim's family members. The court ruled "the combination of the pre-trial voir dire of potential jurors via the Juror Questionnaire ... and follow-up individual voir dire at trial will suffice to determine any bias or prejudice of prospective jurors." Each of the impaneled jurors was questioned by the parties and the court during individual voir dire regarding their knowledge about the case, and the court determined a fair and impartial jury could be chosen to hear the case in Ward County.

[¶ 13] In *Austin*, 520 N.W.2d at 568, this Court said:

The trial court has personally heard the juror's responses on voir dire, and is able to draw the subtle inferences of prejudice and bias that elude the cold record. The trial court is also closer,

chronologically and geographically, to any prejudicial pretrial media coverage, and is better able to contemporaneously assess its effect within the context of then-prevailing community attitudes.

[¶ 14] We conclude the district court did not abuse its discretion in denying Stridiron's motions for access to the jury pool for purposes of a public opinion survey and for a change of venue based on prejudicial pretrial publicity.

### IV

[¶ 15] Stridiron and Davis argue the district court erred in ruling the State's use of a peremptory challenge to excuse the only African–American in the jury pool was not racially motivated.

[¶ 16] In *Batson v. Kentucky*, 476 U.S. 79, 87, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court ruled the Equal Protection Clause of the Fourteenth Amendment prohibits a prosecutor from peremptorily striking a juror solely on the basis of race. In *City of Mandan v. Fern*, 501 N.W.2d 739, 743 (N.D.1993), this Court explained the procedure to be followed when a *Batson* issue is raised:

> "[T]he defendant first must show that he is a member of a cognizable racial group, *Castaneda v. Partida*, [430 U.S. 482, 494, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1977)], and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' *Avery v. Georgia*, [345 U.S. 559, 562, 73 S.Ct. 891, 892, 97 L.Ed. 1244 (1953)]. Finally, the defendant must

show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empaneling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination." *Batson, supra*, 476 U.S. at 96, 106 S.Ct. at 1723.

Once the defendant makes a prima facie showing, the burden shifts to the prosecution to come forward and articulate a race-neutral explanation for the challenges related to the particular case to be tried. *Batson, supra*, 476 U.S. at 97–98, 106 S.Ct. at 1723–1724. A mere denial that the prosecutor had a discriminatory motive will not suffice; "the prosecutor must give a 'clear and reasonably specific' explanation of ... 'legitimate reasons' for exercising the challenges." *Batson, supra*, 476 U.S. at 98 n. 20, 106 S.Ct. at 1724 n. 20 [quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 258, 101 S.Ct. 1089, 1096, 67 L.Ed.2d 207 (1981)].

A district court's findings in resolving a *Batson* challenge during jury selection will not be overturned on appeal unless they are clearly erroneous. *Fern*, 501 N.W.2d at 749. A finding of fact is clearly erroneous when it is induced by an erroneous view of the law, when there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence, we are left with a definite and firm conviction that a mistake has been made. *State v. Roth*, 2008 ND 227, ¶ 6, 758 N.W.2d 686 (quoting *State v. Jacobsen*, 2008 ND 52, ¶ 8, 746 N.W.2d 405).

[¶ 17] Assuming for purposes of argument that Stridiron and Davis established a prima facie case of racial discrimination in the prosecutor's use of the peremptory

challenge, the prosecutor gave a clear and specific race-neutral explanation for exercising the peremptory challenge. The prosecutor explained that the juror he peremptorily challenged had been a juror in an earlier negligent homicide case he had prosecuted in which the jury had acquitted the defendant. The prosecutor noted the juror was reading a book when the judge was talking to the potential jurors. The prosecutor also pointed to his concerns about her answers to questions about her understanding of self defense, an issue which would be raised in the case.

[¶ 18] "Prospective jurors' specific responses and demeanor during voir dire may constitute neutral explanations for exercising . . . peremptory challenges." *Fern,* 501 N.W.2d at 749. We conclude the district court's finding that the prosecutor's use of the peremptory challenge "was not based on race" is not clearly erroneous, and the court did not err in rejecting Stridiron and Davis's *Batson* challenge.

V

[¶ 19] Stridiron argues the district court erred in refusing to allow him to present testimony from a witness who claimed Davis had admitted to her that he killed Velasquez.

[¶ 20] Stridiron filed a pretrial motion in limine seeking to introduce testimony of Alicia Boyce about Davis's "out-of-court confession to the murder" of Velasquez. Stridiron claimed in part that Davis's "confession" was admissible as a statement against interest under N.D.R.Ev. 804(b)(3). Davis and the State objected to the proffered testimony. The district court denied Stridiron's motion, concluding he "failed to establish corroborating circumstances that clearly indicate the trustworthiness of Ms. Boyce's statement." During trial, Boyce testified out of the presence of the jury

that, on July 30, 2007, Davis "was bragging about the fact that he did it and he was going to get away with it and he would do it again if he could." The court disallowed the testimony, adhering to its original ruling on Stridiron's motion.

[¶ 21] Rule 804(b)(3), N.D.R.Ev., provides:

**(b) Hearsay exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

. . . .

(3) *Statement against interest.* A statement that was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability or to render invalid a claim by the declarant against another or to make the declarant an object of hatred, ridicule, or disgrace, that a reasonable person in the declarant's position would not have made the statement without believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement. A statement or confession offered against the accused in a criminal case, made by a codefendant or other person implicating both the declarant and the accused, is not within this exception.

Rule 804(b)(3), N.D.R.Ev., contains three requirements: "(1) the declarant must be unavailable to testify at trial, (2) the statement, at the time of its making, must subject the declarant to criminal liability such that a reasonable person would not have made the statement without believing it to be true, and (3) a statement tending to expose the declarant to criminal liability

and offering to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." *State v. Lefthand,* 523 N.W.2d 63, 68–69 (N.D.1994). A district court's exclusion or admission of evidence under N.D.R.Ev. 804 will not be overturned on appeal unless the court abused its discretion. *See State v. Gagnon,* 1999 ND 13, ¶¶ 6, 9, 589 N.W.2d 560.

[¶ 22] The district court found the first two requirements were satisfied, but ruled Stridiron "failed to establish corroborating circumstances that clearly indicate the trustworthiness of Ms. Boyce's statement." Stridiron argues the court erred in focusing on the trustworthiness of Boyce's statement rather than the trustworthiness of Davis's "confession." This Court has not addressed whether certainty of the making of a statement, which implicates the veracity of the in-court witness, is a proper focus of inquiry under N.D.R.Ev. 804(b)(3).

[¶ 23] Because the "corroborating circumstances" requirements in N.D.R.Ev. 804(b)(3) and Fed. R. Ev. 804(b)(3) are identical, we may look to federal court interpretations of the corresponding federal rule for guidance. *See, e.g., Black v. Abex Corp.,* 1999 ND 236, ¶ 18, 603 N.W.2d 182. The Federal Circuit Courts of Appeal are in disagreement whether the veracity of the in-court witness should be considered in assessing the sufficiency of corroborating circumstances under Fed. R. Ev. 804(b)(3). *See* 30B M. Graham, *Federal Practice and Procedure: Evidence* § 7075 n. 31, at 860–61 (Interim Edition 2006), and cases cited therein. Some courts hold the credibility of the in-court witness should not be considered. *See, e.g., United States v. Seeley,* 892 F.2d 1, 3 (1st Cir.1989); *United States v. Katsougrakis,* 715 F.2d 769, 777 (2d Cir.1983); *United States v. Atkins,* 558 F.2d 133, 135

(3d Cir.1977). Other courts hold trustworthiness is determined by analyzing both the credibility of the in-court witness and the reliability of the out-of-court declarant. *See, e.g., United States v. Hendrieth,* 922 F.2d 748, 750 (11th Cir.1991); *United States v. Rasmussen,* 790 F.2d 55, 56 (8th Cir.1986); *United States v. Alvarez,* 584 F.2d 694, 701 (5th Cir.1978). A summary of the arguments in support of each position is set forth in *United States v. Satterfield,* 572 F.2d 687, 691–92 (9th Cir.1978), a case in which the court found it unnecessary to decide the issue:

A strong argument can be made that the credibility of the witness is irrelevant to admissibility under Rule 804(b)(3), which is basically a hearsay rule. A test for admissibility of hearsay statements based on the credibility of the witness who testifies about the statement is unrelated to the purpose of the general rule against hearsay. Hearsay statements are usually excluded because the declarant is unsworn and unavailable for cross-examination and because the jury cannot evaluate his demeanor. Advisory Committee's Introductory Note on the Hearsay Problem, 56 F.R.D. 183, 288–289. Consistently with these rationales, exceptions to the hearsay rule in Rules 803 and 804 are made because the circumstances of the declaration indicate that the declarant's perception, memory, narration, or sincerity concerning the matter asserted in the statement (*see id.,* 56 F.R.D. at 288) is trustworthy. The jury can evaluate the perception, memory, narration, and sincerity of the witness who testifies about the hearsay declaration, and that witness testifies under oath and subject to cross-examination. To exclude a hearsay statement because of doubt that it was made is to exclude it not because of its hearsay nature but for some other reason. Although some other rule of evidence (pos-

sibly Rule 403) may give the judge the authority to exclude evidence on that other basis, Rule 804(b)(3), to the extent that it is a hearsay rule, does not.

. . . .

Some factors indicate that Rule 804(b)(3) was intended to give judges at least limited power to exclude an exculpatory statement of alleged accomplices because corroborating circumstances do not clearly indicate the trustworthiness of the witness. First, the Rule refers to the trustworthiness of the statement, not of the declarant, and that formulation may be broad enough to put the trustworthiness of the witness as well as the declarant at issue. Second, some portions of the legislative history suggest that the draftsmen intended Rule 804(b)(3) to be more than purely a hearsay rule. Some relevant excerpts from the legislative history are set out in *United States v. Bagley,* 537 F.2d [162,] 167 [ (5th Cir.1976) ], and in addition, the Advisory Committee on the Federal Rules of Evidence noted that "one senses in the decisions a distrust of evidence of confessions by third persons offered to exculpate the accused arising from suspicions of fabrication *either of the fact of the making* of the confession or in its contents. . . ." Advisory Committee's Note on Rule 804(b)(3), 56 F.R.D. 183, 327 (emphasis added). If a court should exclude such a statement if the declarant could not know what he was talking about because he was in jail at the time of the crime, see 4 Weinstein's Evidence § 804(b)(3)[03], at 804–90 (1977), perhaps it should exclude such a statement if the witness could not know what he was talking about because he was in a different jail than the declarant at the time of the alleged statement. . . .

▇ [¶ 24] We agree with the courts which allow a district court to analyze the veracity of the in-court witness because those decisions are better reasoned and give effect to the intentions of the drafters of Fed. R. Ev. 804(b)(3). As the author points out in 30B M. Graham, *Federal Practice and Procedure: Evidence* § 7075 n. 31, at 861:

> One of the truly beneficial effects of the Federal Rules of Evidence is the recognition that the issue of certainty of making of an out-of-court declaration should not be left in all instances solely to exploration on cross-examination. Cross-examination of a person merely repeating what he says was said is not likely to be effective. This factor played a major role in Congress's determination to revise Rule 801(d)(1)(A), prior inconsistent statements, to require that the prior statement be made at a formal hearing. Similarly, with respect to Rule 807, certainty of making has been recognized as an appropriate factor in determining equivalent circumstantial guarantees of trustworthiness. Certainty of making should be considered as well in determining the issue of "corroborating circumstances" under rule 804(b)(3).

We conclude that in determining "corroborating circumstances" under N.D.R.Ev. 804(b)(3), the district court should analyze both the credibility of the in-court witness and the reliability of the out-of-court declarant.

[¶ 25] In *Rasmussen,* 790 F.2d at 56, the Eighth Circuit Court of Appeals listed the following nonexclusive factors to be considered in analyzing the veracity of the in-court witness and the reliability of the out-of-court declarant:

> (1) whether there is any apparent motive for the out-of-court declarant to misrepresent the matter, (2) the general character of the speaker, (3) whether other people heard the out-of-court statement, (4) whether the statement

was made spontaneously, (5) the timing of the declaration and the relationship between the speaker and the witness.

[¶ 26] The district court found Boyce had a motive to fabricate because she was Stridiron's girlfriend's best friend. Other circumstances cast doubt on Boyce's veracity. On August 2, 2007, Boyce submitted to investigators a statement written in her own hand that did not mention Davis had told her he killed Velasquez. Boyce did not report to the police her claim that Davis told her he had killed Velasquez until March 11, 2008, approximately eight months after Davis's "confession" purportedly occurred. Boyce's husband, who Boyce claimed was also a party to the conversation, never indicated Davis made the statement. Although Stridiron claims the presence of gunshot residue on Davis's hands supports the veracity of his statement, the evidence reflected that Stridiron had much more gunshot residue on his hands than was found on Davis, and the court determined this "evidence alone is not sufficient to *clearly* indicate the trustworthiness of [Boyce's] statement."

[¶ 27] We conclude the district court correctly analyzed the requirement of corroborating circumstances under N.D.R.Ev. 804(b)(3), and did not abuse its discretion in ruling Boyce's proffered testimony was inadmissible.

## VI

[¶ 28] Davis argues there was insufficient evidence to support the jury's verdict finding him guilty of aggravated assault.

[¶ 29] This Court will reverse a criminal conviction only if, after viewing the evidence and all reasonable evidentiary inferences in the light most favorable to the verdict, no rational factfinder could have found the defendant guilty beyond a reasonable doubt. *See, e.g., State v. Curtis*, 2008 ND 108, ¶ 28, 750 N.W.2d 438.

[¶ 30] The State charged Davis with class C felony aggravated assault, in that he:

willfully caused serious bodily injury to another human being or knowingly caused bodily injury or substantial bodily injury to another human being with a dangerous weapon or other weapon, the possession of which under the circumstances indicated an intent or readiness to inflict serious bodily injury, to-wit, the defendant caused serious bodily injury, bodily injury, or substantial bodily injury, to one Joshua Velasquez under circumstances in which the defendant assaulted Velasquez with a scythe/grass cutter.

[¶ 31] Davis's challenge to the sufficiency of the evidence appears to be an attack on the jury's refusal to accept his assertion of self-defense. "This Court does not sit as a 'thirteenth juror' to make independent determinations of credibility of witnesses or other evidentiary weight." *State v. Barendt*, 2007 ND 164, ¶ 21, 740 N.W.2d 87. Several witnesses testified about seeing Davis leave the duplex with a garden implement, and either hearing or seeing Davis striking Velasquez numerous times with the garden tool and inflicting serious injuries. We conclude there is sufficient evidence to support Davis's conviction.

## VII

[¶ 32] The criminal judgments are affirmed.

[¶ 33] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.